CHAPMAN *vs.* ROBERTSON and others.

Where R. a resident of the state of New-York applied to C. at his residence in England for a loan of money, upon the security of a bond and a mortgage upon lands in New-York, at the legal rate of interest in that state, and it was there agreed that upon the return of R. to New-York he should execute his bond and mortgage, and have the mortgage duly recorded in the county where the lands were situated, and that upon the receipt of the bond and mortgage by C. in England he should deposit the money loaned with the bankers of R. in London, for his use; and the bond and mortgage were executed and the money received accordingly; *Held*, that the mortgage was a valid security for the loan according to the laws of New-York; and that upon a bill filed there to foreclose the mortgage, R. could not set up the usury law of England as a defence to the suit.

The construction and the validity of a contract which is purely personal depends upon the law of the place where the contract is made, unless it is made in reference to the laws of some other place or country where it is to be performed or carried into effect.

But the transfer of lands or other heritable property, or the creation of any interest in or lien thereon, must be made in conformity to the local laws of the place where the property is situated. And such local laws must also be resorted to for the purpose of determining what is to be considered real or heritable property so as to give it locality at such place.

Upon a bill to foreclose a mortgage, or to obtain satisfaction of the amount due from the defendant, the latter may offset a debt due to him from the complainant, which would be a proper subject of offset in a suit brought by the complainant, at law, to recover the amount due upon his mortgage.

Where a mere personal security is given for the payment of money loaned, and no place of payment is specified therein, the residence of the lender at the time of giving such security must be considered as the place of payment for the purpose of deciding the question whether such security is invalid on the ground of usury.

But it seems that a loan of money, made upon personal security, at the rate of interest allowed by the law of the place where the loan was made and the security given, although made payable to the lender at his place of residence where the legal rate of interest was less, would not be a violation of the usury laws of the latter place, unless intended as a mere cover for usury.

THE bill in this cause was filed to foreclose a mortgage given by the defendant Robertson to the complainant, upon a lot of land in the city of Hudson. The cause was heard upon bill and answer; and the facts as stated in the pleadings were as follows: The defendant Robertson, a resident of this state, being in England, in the summer of 1833,

August 1.

1837.

Chapman
v.
Robertson.

where the complainant resided, applied to the latter at his residence for the loan of £800 sterling, upon the security of his (Robertson's) bond and mortgage on his lands in this state. And the complainant then agreed to loan him that sum upon the security offered, at an interest of seven per cent per annum, the interest to be paid annually. It was further agreed between the parties, that upon the return of Robertson to this state, he should execute his bond and mortgage to the complainant and have the same duly recorded, and should transmit the same to the complainant in England, who, upon the receipt of such securities, was to deposit the £800 with Robertson's bankers in London for his use. The securities were executed and sent to the complainant accordingly, and he deposited the money with Robertson's bankers for his use according to the agreement. The first year's interest upon the bond and mortgage was duly paid, except the sum of $90,73 : For which sum, as the defendant Robertson alleged in his answer, he had a just claim against the complainant for advances made to his son at his request ; and which sum Robertson prayed might be offset against the interest due upon the bond and mortgage. The defendant Robertson also set up the usury laws of England, in his answer, as a defence to the suit. And he insisted that inasmuch as the original agreement for the loan was made in England, and the money was received there, the contract to pay more than five per cent per annum for the interest upon the loan, rendered the bond and mortgage usurious and void.

*K. Miller*, for the complainant.

*A. L. Jordan*, for the defendant Robertson.

THE CHANCELLOR. The bank which is a judgment creditor of the mortgagor having suffered the bill to be taken as confessed, the only questions in controversy in this cause arise out of the facts set up in the answers of Robertson as matters of defence. The offset claimed by Robertson must be allowed ; as he alleges in his answer that it

was money advanced to a son of the complainant and at his request. The revised statues expressly provide that in suits for the payment or recovery of money, set offs shall be allowed in this court in the same manner and with the like effect as in actions at law. (2 *R. S.* 174, § 40.) And this is a suit for the recovery of money, to wit, the interest money due on the bond and mortgage. The defendant Robertson therefore having a just demand against the complainant for the money advanced at his request, and which would at law be a proper subject of offset in a suit upon the bond, he has a right under this provision of the revised statutes to set off the amount thus due to himself against the interest which he owes to the complainant upon the bond and mortgage, which the latter is seeking to recover or to obtain the payment of by the present suit in this court.

I am aware that in the case of *Troup* v. *Haight*, (*Hopk. Rep.* 270,) Chancellor Sanford intimated an opinion that a cross bill might be necessary to enable a defendant to avail himself of a set off in a suit in this court. This, however, was before the adoption of the revised statutes, which put the set off in this court and at law upon the same footing. And I can see no necessity for a double litigation by cross suits, in such a case, in one court more than in the other. The set off may be litigated and determined upon a general replication to the defendant's answer in this court, as well as upon a notice annexed to the plea of the defendant in a suit at law. The statement of the set off in the answer is a substitute for the notice annexed to the plea. And, upon the general replication to the answer, the complainant may introduce any evidence which is relevant and proper for the purpose of showing that the demand claimed as a set off is not legally or equitably due, or, that for any other reason it should not be allowed. The defendant, on the other hand, may introduce proofs to rebut any special defence to his claim of offset which the complainant may attempt to establish. This court has already decided that a debt due from the mortgagee to the mortgagor may be offset against the amount due from the latter on the mortgage. And it may be done even where the mortgage has been as-

signed, if the right of set off existed at the time of the assignment. (*Rosevelt* v. *The Bank of Niagara, Hopk. Rep.* 579.) The defendant in the present case is, therefore, entitled to the set off claimed in his answer ; and a cross bill is not necessary to enable the court to give him the full benefit thereof upon this bill of foreclosure.

The other point in this case presents a very nice question arising out of the conflict of laws in this state and England relative to the legal rate of interest. It is an established principle that the construction and validity of contracts which are purely personal depend upon the laws of the place where the contract is made ; unless it was made in reference to the laws of some other place or country where such contract, in the contemplation of the parties thereto, was to be carried into effect or performed. (2 *Kent's Comm.* 457. *Story's Confl. of Laws*, 227, § 272.) On the other hand it appears to be equally well settled by the laws of every state or country, that the transfer of lands or other heritable property, or the creation of any interest in or lien or incumbrance thereon, must be made according to the *lex situs* or the local law of the place where the property is situated. And it has been decided that the *lex loci rei sitæ* must also be resorted to for the purpose of determining what is or is not to be considered as real or heritable property, so as to have locality within the intent and meaning of this latter principle. (*Newlands* v. *Chalmer's trustees*, 11 *Shaw & Dunl. Sess. Cas.* 65.) The case under consideration would have come clearly within the first of these principles, if the bond of Robertson had been the only security for this loan ; although he resided in this state and intended to use the money here, where the legal rate of interest is seven per cent as specified in the bond. There is nothing in the bond from which it can be inferred that the parties contemplated the payment of the money in this state. And as no place of payment is mentioned, the legal construction of the contract is that the money is to be paid where the obligee resides or wherever he may be found. His residence being in England at the execution of the bond, that must therefore be considered the place of payment, for the

purpose of determining the question where that part of the contract is to be performed. I lay out of view the fact that the bond itself was signed and sealed in this country, because as a mere personal contract it would be wholly inoperative until it was received by the complainant in England, where the money was then to be deposited with the banker for the use of the borrower. To this extent the decision of the court of king's bench in the case of *Dewar* v. *Span*, (3 *Term Rep.* 425,) is unquestionably a correct exposition of the law of England and also of this state. For, as I understand that case, the bond which was the subject of litigation had no other connection with the West India estate than that the consideration of the original bond was a part of the purchase money upon the sale of an estate at St. Christopher's; which estate had been sold and conveyed many years previous to the execution of the bond in question. And it does not appear from the report of the case that the debt for which the bond was given was in any way chargeable upon the land at that time. From the plea which the defendant put in, and which must have been sustained by the proof on the trial, it is evident that the last bond, upon which that suit was brought, was given for the purpose of obtaining a further extension of credit upon a debt which was then due upon personal security in England, where all the parties to the last bond resided. It was therefore a new and distinct contract for the *forbearance* of a debt upon personal security merely; although the original consideration for that debt was the estate sold in the West Indies more than forty years previous to that time. There was no question of conflict of laws in the case; but merely whether the bond was a security respecting lands in the West Indies within the intent and meaning of the English statute on that subject. And the court very properly held that the statute did not extend to contracts merely personal, and not connected with a security upon the land. That case, therefore, leaves the question untouched whether, indepenent of that statute, a mortgage executed in England upon a West India estate would have

been valid if interest had been reserved according to the *lex rei sitæ.*

I am aware that in *Stapleton* v. *Conway,* (3 *Atk. Rep.* 727,) an opinion was expressed by Lord Hardwick that a mortgage upon land in the colonies, if executed in England and connected with a bond or other personal covenant for the payment of more than five per cent interest, was usurious and void. And there are other dicta to be found in some of the cases which occurred previous to the statute 4 *Geo.* 3, *ch.* 79, which are supposed to recognize the same principle. The question, however, does not appear to have been definitely settled until the passage of that act, which was intended to remove all doubts upon the subject; and which applied to contracts theretofore made as well as to securities which should be executed subsequent to the passing of the act. Doubts might well exist as to the validity of loans made in England, upon such securities, where both parties resided there; especially if the money was not loaned for the purpose of being used in the colony where the mortgaged premises were situate, as the giving of such a security might be a very convenient mode of evading the statute of usury. No doubt, however, appears to have been entertained as to the validity of a loan upon a bond and mortgage actually executed in Ireland or the colonies, although the loan itself was made in England and was made payable there or to a mortgagee who resided there. For that reason I presume the statute merely puts the bond and mortgage executed in England upon the same footing, as to validity, as if they had been executed in the colony; and without any reference to the place where the money loaned was received or intended to be used, or was by the agreement of the parties to be repaid. I have very little doubt, therefore, that a security like that which is now under consideration, actually executed in the country where the mortgaged premises were situate, by a person domiciled at that place, for the repayment of a loan to be made upon the faith of such foreign securities, and for the purpose of being used by the borrower in the country of his residence, would have been considered as valid by the courts of Eng-

1837.

Chapman
v.
Robertson.

land even if this statute had not been passed. And if this was a valid mortgage by the laws of England, so that a recovery might have been had in that country upon the covenant for the repayment of the money, or upon the bond given therewith as collateral security, it is unquestionably a valid security here to give a lien upon the mortgaged premises for the payment of a rate of interest authorized by the *lex situs*.

The distinguished author of the recent learned and invaluable commentary on the conflict of laws appears to lean to the opinion, that the mere taking of a security upon lands in another state or country, on a loan at a higher rate of interest than is allowed by the laws of the place where such loan is made and the security given, will not so change the locality of the contract as to protect it from the operation of the usury law of the place where such loan is made, unless there is a further agreement, either express or implied, that the money shall be repaid at a place where the rate of interest reserved upon the loan is allowed by law. (*Story's Conf. of Laws*, 238, § 287.) But neither he nor Chancellor Kent appear to have expressed any opinion upon the precise question presented in the present case, in which the rate of interest reserved is allowed by the law of the place where the mortgaged premises are situated, and where the bond and mortgage were actually executed, but is more than could be legally reserved by the law of the place where the money was received, and where by the legal construction of the contract it must be deemed to be payable. Upon a full examination of all the cases to be found upon the subject either in this country or in England, none of which however appear to have decided the precise question which arises in this cause, I have arrived at the conclusion that this mortgage executed here, and upon property in this state, being valid by the *lex situs*, which is also the law of the domicil of the mortgagor, it is the duty of this court to give full effect to the security; without reference to the usury laws of England, which neither party intended to evade or violate by the execution of a mortgage upon the lands here.

If no rate of interest was specified in the contract it might perhaps be necessary to inquire where the money was legally payable when it became due, for the purpose of ascertaining what interest the mortgagee was entitled to receive. (*Quince* v. *Callender,* 1 *Desaus. Rep.* 160. *Scofield & Taylor* v. *Day,* 20 *John. Rep.* 102.) But if a contract for the loan of money is made here, and upon a mortgage of lands in this state which would be valid if the money was payable to the creditor here, it cannot be a violation of the English usury laws; although the money is made payable to the creditor in that country and at a rate of interest which is greater than is allowed by the laws of England. This question was very fully and ably examined by Judge Martin in the case of *Depeau* v. *Humphreys,* in the supreme court of Louisiana, (20 *Martin's Rep.* 1;) and that court came to the conclusion, in which decision I fully concur, that in a note given at New Orleans, upon a loan of money made there, the creditor might stipulate for the highest legal rate of conventional interest allowed by the laws of Louisiana, although the rate of interest thus agreed to be paid was higher than that which could be taken, upon a loan, by the laws of the state where such note was made payable. Here the verbal contract for a loan, upon the security of a mortgage upon lands in this state, was wholly inoperative until the mortgage and other written security were executed in this state, and which agreement was consummated by the deposit of the money to the order of the borrower. It was a contract partly made in this state and partly in England. And being actually made in reference to our laws, and to the rate of interest allowed here, it must be governed by them in the construction and effect of the contract as to its validity. An appeal to the courts of this state was also contemplated by the parties, if necessary, to enforce a performance of the written agreement for the repayment of the loan; although from the residence of the mortgagee in England it might be necessary to send the money there to make a legal tender of the debt. And the complainant, upon this foreclosure of his mortgage here, is only entitled to recover the amount loaned, with seven per cent interest thereon,

payable to him or his soliciior here, and is not entitled to any allowance for the difference in exchange between the two countries. (*See* 20 *John. Rep.* 102.)

The usual decree for a foreclosure and sale must therefore be entered. And the interest must be computed by by the register and inserted in the decree, except the interest for the first year which is paid ; the set off being allowed in part payment of the first year's interest.