J. & J. H. PECK AND LYMAN & MARSH *v.* MAYO, FOLLETT
& Co.

Where a promissory note is made in Canada, and indorsed in this state,
in both of which places the rate of interest is six *per cent.* and payable
at a day certain in the state of New York, where the rate of interest
is seven *per cent.* and not paid when due—both the makers and the in-
dorsers, are liable to pay seven *per cent.* interest, as damages, for such
delay.

As a general rule those incidents of a contract, which concern its force
and validity, as well as its performance, and damages for non perform-
ance, will be determined by the law of the place of payment.

ASSUMPSIT, against the defendants as indorsers of two
promissory notes, one dated January 9, 1834, the other da-
ted April 14, 1834, given by Horatio Gates & Co. of Mont-
real, L. C. to the defendants, each payable four months after
date at the Mechanics & Farmers Bank, in Albany, N. Y.

Plea, non-assumpsit.　Issue to the court.

In addition to the indorsement by the defendants, in blank,
there was a special indorsement on each note, of the follow-
ing tenor:

' We hereby request that this note be not protested, and
' agree to hold ourselves liable for its payment. May 9, 1834.

' For the late firm of MAYO, F. & Co.

' T. FOLLETT.'

At the August term of the county court, 1839, the suit
was continued, by agreement of the parties, under a rule
' that there be judgment for the plaintiffs at the March term
' of the county court, 1840, and interest to be computed at
' seven *per cent.* and the interest to be added to the judg-
' ment, if the court adjudge seven *per cent.* to be recoverable.'

At the last mentioned term of the county court, upon the
assessment of damages, it appeared that the notes were
made at Montreal, where the makers resided, and that the
indorsers and plaintiffs then did, and still do, reside in this
state.　It was agreed that the lawful rate of interest at
Montreal is six *per cent. per annum,* and that the lawful rate
of interest in New York, where the notes were payable, is
seven *per cent. per annum.*　The plaintiffs contended that
they were entitled to recover seven *per cent.* interest after

Chittenden,
January,
1842.

Pecks, et al.
v.
Mayo, Follett,
et al.

the notes fell due, but the court ruled, *pro forma*, that damages should be assessed for the principal and six per cent only. To this decision the plaintiffs excepted.

*Lyman & Marsh*, for plaintiffs.

I. To the general principle, that liabilities for a breach of contract made in one place, with a view to performance in another, shall be regulated by the law of the place of performance, we cite *Robinson* v. *Bland*, 2 Burrow, 1077, 1078, 1079, 1083. *Thompson* v. *Ketchum*, 4 J. R. 285, 288.

II. The following cases appear to us to sanction the application of this principle to the case under consideration. *Champant* v. *Ranelagh*, Prec. Chan. 128, cited with approbation by Mr. Justice Wilmot, in *Robinson* v. *Bland, ubi supra*, (1084) and by Mr. Justice Platt in *Fanning* v. *Consequa*, 17 J. R. 511, (519,) which last case strongly supports our position. See also Story's Conflict of Laws, 241, 243, 245, 252. *Scofield & Taylor* v. *Day*, 20 J. R. 102. *Hosford* v. *Nichols*, 1 Paige, 220, (225). *Bryce & Henry* v. *Edwards*, 4 Peters, 111, (123.)    *U. S. Bank* v. *Daniels*, 12 Peters, 32, (55.) *Andrews* v. *Pond*, 13 Peters, 65 (78).

III. The special indorsement makes the defendants liable as original promissors, and their liability is not to be restricted to that of an indorser surety. Moreover, it is believed that the distinction between the liabilities of makers, or drawers, and indorsers, if any exist, is limited to damages beyond interest imposed by statute or local custom. But however this may be, the principle cannot avail these defendants, who are not considered as *indorsers* but rather as *drawers* of a bill of exchange. Lord Mansfield in *Heylin* v. *Adamson*, cited in Bayley on Bills, 3, note.

*C. Adams*, for defendant.

The undertaking of the defendants was that on the failure of the maker to pay the notes, according to their tenor, on protest and notice to them, they would pay the amount at Burlington.

The indorser is liable to pay damages according to the law of the place of indorsement. *Potter* v. *Brown*, 5 East,

CHITTENDEN,
*January,*
1842.

Pecks, *et al.*
*v.*
Mayo, Follett,
*et al.*

124. *Powers* v. *Lynch,* 3 Mass. 77. *Slacum* v. *Pomery,* 6 Cranch, 223. 2 Kent, 460. Story's Conf. 261-2.

On notes not reserving interest, the amount recovered, beyond the face of the note, is as damages for the breach of the contract, and these damages are subject of regulation by each state for itself. Chit. on Bills, last part.

Remedies must be in conformity to the law of the place where sought. *Nash* v. *Tupper,* 1 Caines, 402. *Ruggles* v. *Keeler,* 3 Johns. 268. *Smith* v. *Mead,* 3 Conn. 255. *Medbury* v. *Hopkins,* 3 Conn. 472. 2 Kent's Com. 461-2.

The question as to the rate of interest to be allowed on notes drawn as these were, payable *with interest,* does not necessarily arise in this case. But had they been payable with interest we contend that only six *per cent.* could be recovered.

Interest when reserved is part of the contract, and the rate, therefore, must be in conformity to the law of the place where made. *Connor* v. *Bellamont.* 2 Atk. 382. *Dewar* v. *Span,* 3 Term. 425. *De Wolf* v. *Johnson,* 10 Wheat. 367. Eq. C. Ab. 288, E. 2 Kent, 460-1, (469.)

In contracts reserving interest, but not stating the amount, the place of payment may be a circumstance to determine the *rate* intended, but not the *validity* of the contract. *Scofield* v. *Day,* 20 Johns. 102. *Cash* v. *Kennion,* 11 Vesey, 314.

Kent's doctrine (4 Com. 460-1) that the rate of interest may be according to the law of the place of payment, is without an authority to support it. *Thompson* v. *Powles,* 2 Sim. *U. S. Bank,* v. *Daniel,* 12 Peters, 32; *Andrews* v. *Pond et al.* 13 Peters, 65; *Robinson* v. *Bland,* 3 Burr., have no bearing on this point.

Interest is properly an incident growing out of the consideration on which it is founded, and hence when the consideration passes in one country, and the contract for it is made in another, the rate of interest may be according to the place where the consideration was advanced. *Ekins* v. *East In. Co.,* 3 Eq. E. Ab. 533-4. *Hosford* v. *Nichols,* 1 Paige, 220. *Harvey* v. *Archbold,* 21 Com. L. 412. *Winthorp* v. *Carleton,* 12 Mass. 4.

The validity or invalidity of contracts must be determined according to the *lex loci contractus. Stapleton* v. *Conway,* 1 Vesey, 428. Same case, 3 Atk. 727. *Robin on* v,

CHITTENDEN,
January,
1842.
───────
Pecks, *et al.*
*v.*
Mayo, Follett,
*et al.*

*Bland,* 3 Burr. 1077. *Dessau* v. *Humphry,* 20 Martin, 1. *Pearsal* v. *Dwight,* 2 Mass. 88, Story's Conf. 201, 244, 248, 252. 2 Kent 454, 7-8, 460. *De Wolf* v. *Johnson,* 10 Wheat. 367. *Andrews* v. *Pond,* 13 Peters, 65.

If the rate of interest is to be according to the law of the place of payment, statutes against usury would become useless, from the facility of evading them. Twelve *per cent.* philanthropists would only have, to add, *payable at New Orleans,* to evade the statute.

The opinion of the court was delivered by

REDFIELD, J.—This action is upon a promissory note, made in Montreal, where the legal rate of interest is *six per cent.,* payable at the M. & F.'s Bank, in the city of Albany, where the legal rate of interest is *seven per cent.,* and indorsed by the defendants in this state, where the legal rate of interest is *six per cent.* This action being against the defendants, as indorsers, the only question is, what rate of interest are they liable for? The note was payable at a day certain, but no interest stipulated in the contract. The interest claimed is for damages in not paying the money when due.

The first question naturally arising in this case is, what rate of interest, by way of damages, are the signers liable for? There are fewer decisions to be found in the books, bearing directly upon this subject, than one would naturally have expected. It is an elementary principle, upon this subject, that all the incidents pertaining to the validity and construction, and especially to the discharge, performance, or satisfaction of contracts, and the rule of damages for a failure to perform such contract, will be governed by the *lex loci contractus.* This term, as is well remarked by Mr. Justice Story, in his Conflict of Laws, 248, may have a double meaning, or aspect; and that it may indifferently indicate the place where the contract is actually made, or that where it is virtually made, according to the intent of the parties, that is, the place of performance. The general rule now is, I apprehend, that the latter is the governing law of the contract. Hence the elementary principle undoubtedly is that the rate of interest, whether stipulated in the contract, or given

by way of damages for the non-performance, is the interest of the place of payment.

We will next examine whether any positive rule of law has been established, contravening this principle. 2 Kent Com. 460, 461. Chanceller Kent expressly declares that this elementary principle is now the "received doctrine at Westminister Hall," and cites *Thompson* v. *Powles*, 2 Simons' R. 194, (2 Cond. Ch. R. 378.) This case does not necessarily decide this point, but the opinion of the Vice Chancellor expressly recognizes the rule, that, although the rate of interest stipulated is above the English interest, still the contract will not be usurious, unless it appear to be a contract made in England and there to be performed. The case of *Harvey* v. *Archbold*, 1 Ryan & Moody, 184, (21 Eng. C. L. 412,) recognizes more expressly the same doctrine. The case of *Dessau* v. *Humphreys*, 20 Martin, 1, expressly decides, that a contract made in one country, to be performed in another, where the rate of interest is higher than at the place of entering into the contract, it may stipulate the higher rate of interest. Mr. Justice Story recognizes the elementary rule, above alluded to, as the settled law. Conflict of Laws 243, 246. Similar language is adopted by Mr. Justice Thompson, *Boyce* v. *Edwards*, 4 Peters' R. 111, and by Mr. Chief Justice Taney, in *Andrews* v. *Pond*, 13 Peters, 65, and by Chancellor Walworth, in *Hosford* v. *Nichols*, 1 Paige, 220. Much the same is said by the court in the case of the *Bank of the U. S.* v. *Daniel*, 12 Peters, 32. In many of these cases the question alluded to was not directly before the court, but, by all these eminent jurists, it seems to have been considered as one of the long settled principles of the law of contract. The same rule of damages was, in the case of *Ekins* v. *the East India Co.*, 1 P. Wms. 395, applied to the tortious conversion of a ship in Calcutta, the court making the company liable for the value of the ship, at the time of conversion, and the India rate of interest for the delay of the payment of the money. In this case the interest allowed was greater than the English interest.

When the contract is entered into in one country, to be performed in another, having established a lower rate of interest than the former, and the contract stipulates interest

CHITTENDEN,
*January,*
1842.

Pecks, *et al.*
*v.*
Mayo, Follett,
*et al.*

CHITTENDEN,
January,
1842.

Pecks, *et al.*
v.
Mayo, Follett,
*et al.* generally, it has always been held that the rate of interest recoverable was that of the place of performance only. It is expressly so decided in *Robinson* v. *Bland,* 2 Burrow, 1077. *Fanning* v. *Cousequa,* 17 Johns. 511. *Scofield* v. *Day,* 20 Johns. R. 102.

From all which I consider the following rules, in regard to interest on contracts, made in one country to be executed in another, to be well settled.

1. If a contract be entered into in one place to be performed in another, and the rate of interest differ in the two countries, the parties may stipulate for the rate of interest of either country, and thus, by their own express contract, determine with reference to the law of which country that incident of the contract shall be decided.

2. If the contract, so entered into, stipulate for interest generally, it shall be the rate of interest of the place of payment, unless it appear the parties intended to contract with reference to the law of the other place.

3. If the contract be so entered into, for money, payable at a place on a day certain, and no interest be stipulated, and payment be delayed, interest, by way of damages, shall be allowed according to the law of the place of payment, where the money may be supposed to have been required by the creditor for use, and where he might be supposed to have borrowed money to supply the deficiency thus occuring, and to have paid the rate of interest of that country.. This is expressly recognized as the settled rule of law, in regard to the acceptor of a bill, who stands in the place of the maker of these notes. 3 Kent's Com. 116.

Having thus, as we think, satisfactorily shown that the settled rule of law upon this subject, will render the makers of these notes liable for the interest of the state of New York, it is needless to spend time in regard to the defendants, who are the first indorsers, and thus stand in the place of the drawer of a bill of exchange. The contract of the drawer of a bill, and the indorser of a note, is collateral to that of the acceptor, or maker. They promise to pay upon his failure, and proper proceedings had. Chancellor Kent says, ' the ' engagement of the drawer, and indoser, of every bill is, ' that it shall be paid at the proper time and place, and if it ' be not, the holder is entitled to indemnity for the loss arising

'from this breach of contract.' Such is the language of all the books upon the subject, and such is the only rule which can be made to look reasonable, or to consist with justice. It must sound strangely in the ears of a lawyer, that these plaintiffs may here recover of the defendants the principal sum, and six *per cent.* interest, and that the makers of the note are still liable for the additional one *per cent.*, or that while, by the terms of the contract, the makers were and are bound to pay seven *per cent.* interest, the plaintiffs, if they will sue the indorsers, must put up with less, and that in satisfaction of the entire contract. If the rate of interest in Vermont were ten *per cent.*, could any man suppose the defendants in this case liable for that rate of interest? No man, I apprehend, doubts, that the indorser of a note or bill is liable in regard to the principal debt, to the same extent as the original debtor. The counsel on both sides agree in this point. The only objection which has been urged to this rule in regard to the rate of interest, which has seemed to me at all embarrassing, is, that it will enable persons fraudulently to evade the usury laws sometimes. This apprehension induced the courts in Westminster Hall, for many years, to introduce an exception into the rules of construing contracts upon this subject, and even to declare all contracts, entered into in England, and stipulating for a higher rate of interest than that there allowed, to be void under the statutes against usury. *Dewar* v. *Span*, 3 Term. R. 425, and cases cited. Chancellor Kent, in a recent note to the 4th edition of his Commentaries, 2 vol. 461, says, 'this principle has much to recommend it for 'reasonableness, convenience and certainty, except in cases 'where the whole arrangement was evidently, and fraudulently, 'intended as a cover for usury.' Such cases should be treated like other fraudulent attempts to evade the usury laws. But I apprehend that a contract made, *bona fida,* in one country and to be performed in another, and stipulating the higher rate of interest of the latter, is not usurious with reference to the laws of the former country. A contract to be usurious, by our law, must not only be made here, but to be performed here. We regret that the members of the court, after two arguments, should not be more unanimous; but the judgment here pronounced is that of a majority of the members.

Judgment reversed and new trial, unless the parties consent to enter judgment according to the rule entered into in the county court.

By consent, judgment for plaintiff according to the rule.