[ALBANY SPECIAL TERM, July 29, 1856. *Harris*, Justice.]

POMEROY *vs.* AINSWORTH and others.

By a written agreement, between P. of the first part and A. & H. of the second part, P. agreed to cut 50,000 pine logs from townships 22 and 25 in F. county, and to deliver them to A. & H. on certain lakes and ponds, and on the Racket river, and to drive them down such river to the saw mill pond of P., and to saw out such logs for A. & H. In consideration whereof A. & H. agreed to pay and advance to P., at the execution of the agreement, $3000, and thereafter, at different times, in the whole, 50 cents for each log driven into said pond ; and also the further sum of $1.25 for every 1000 feet for all boards and lumber sawed by P. A. & H. were to retain 10 cents so to be advanced, for each log, until the deduction should amount to the $3000 so advanced by them to P. ; and all payments and advances were to be made by A. & H. in the bills of the Bank of C., so long as said bank continued to redeem in Boston or New York; and P. was to exchange such bills for funds current in Boston or New York, after they had been returned to the bank and were pre-

Pomeroy *v.* Ainsworth.

sented to him, &c.    A. & H. were to use their best skill in selling the lumber at the highest prices, &c., and all proceeds of the sales were to be applied, in the first instance, towards repayment of all advances of A. & H., with interest, and of the expenses of the sale; and the balance was to be paid by A. & H. to the bank of C. upon P.'s prior indebtedness to that bank.    A. & H. also agreed to bestow their time and services in the business, either in measuring the logs, &c. or in the sale of the lumber, for which they were to be paid by P. $1000 each, for the year, &c.    Concurrently with this agreement P. conveyed to A. & H. his interest in said townships 22 and 25, being about 4000 acres of timber lands, from which the 50,000 pine logs were to be cut.

*Held,* that this transaction was not in form an agreement for a loan of money. And A. & H. having denied, in their answers, that P. applied to them for a loan of money, or that they agreed or proposed to loan him any money, and that denial being confirmed by the affidavits of three witnesses who were present during the negotiation and at the execution of the agreement; *it was further held,* that the agreement was not void as being for the loan or forbearance of money, within the meaning of the statute of usury.

And it appearing from the pleadings and affidavits that the agreement was negotiated, made and executed in Vermont, where A. & H. resided, and where the Bank of C. was located; that $3000 was advanced to P. by A. & H. in that state; that at the time of the execution of the agreement it was intended that the lumber, or a greater portion thereof, should be sent to Boston, and other places in New England, for market; that it was intended and understood by the parties that the interest which A. & H. would receive, if any, for their advances, under the agreement, should be computed according to the laws of Vermont, at the rate of six per cent per annum, *it was also held,* that the agreement, at least so far as respected the amount of interest to be paid to A. & H. for their advances to P., was made in reference to the laws of Vermont, which must govern its construction, and determine its validity.    That such agreement must be presumed to be legal, by the laws of that state, inasmuch as the contrary had not been shown.    And if legal by the laws of Vermont, that it was protected from the operation of the usury laws of this state.

*Held further,* that the agreement being silent as to the place where the advances made by A. & H. were to be repaid, such advances were to be repaid to them in Vermont, that being their place of residence.

To constitute a usurious contract there must be—1, a loan, and 2, an agreement to pay illegal interest.    And it is essential to the nature of a loan that the thing borrowed is at all events to be returned.    Where the principal is *bona fide* put in hazard it is no loan; and it is no usury to take more than legal interest.

It is also essential to the nature of usury that a certain gain, exceeding the legal rate of interest, is to accrue to the lender as a consideration for the loan.    If the gain to the lender, beyond the legal rate of interest, is made dependant on the will of the borrower, as where he may discharge himself from it by the punctual payment of the principal, the contract is not usurious.

As a general rule, the law of the place where contracts purely personal are made must govern as to their construction and validity, unless they are to be performed in another state or country, and were made in reference to the laws of such state or country, in which case their construction and validity depend upon the law of the place of performance.

If no place of performance is expressly stated, or implied from the terms of the contract, the law of the place where it was made will govern.

If a contract is to be performed partly in one country and partly in another, each portion is to be interpreted according to the laws of the country where it is to be performed.

Where a contract for the payment of money is made in one place, and payment in another, and no interest is expressed in the contract, the interest is to be governed by the law of the place where it is payable.

A party alleging that an agreement is invalid, under the usury laws of another state, must show what are the laws of that state in relation to usury. In the absence of such proof, the presumption is that the agreement is valid, under those laws.

MOTION by the defendants, Ainsworth & Hunt, to vacate an injunction order. The facts appear in the opinion of the court.

*W. A. Dart*, for the plaintiff.

*H. L. Knowles* and *J. Mullin*, for the defendants.

PAIGE, J.   The injunction order in this case enjoins the defendants, Ainsworth & Hunt, from selling, removing, disposing of, or in any way interfering with, the saw logs and lumber mentioned in the complaint, and cut and manufactured under the agreement set forth therein.   This injunction order is sought to be sustained upon the following grounds, viz: 1. That such agreement, as well as the mortgage executed by the plaintiff to the Bank of Castleton, and the deed from the plaintiff to the defendants, Ainsworth & Hunt, of the ½ of 931,800 acres in townships 22 and 25 Franklin county, from which the logs were cut, were usurious.   2. That Ainsworth & Hunt have threatened to sell the logs without consulting the plaintiff, in violation of the agreement.   The agreement provides that in case the plaintiff shall neglect or refuse to exchange, for funds current in Boston

or New York, the Bank of Castleton bills which had been advanced to him by Ainsworth & Hunt as required in the agreement, Ainsworth & Hunt should have the right to sell a sufficient quantity of the logs to repay all the advances previously made by them to the plaintiff, provided that on the sale the plaintiff should have the right to be the purchaser at the highest price offered by any other person. The defendants, Ainsworth & Hunt, in their answer, state that the plaintiff, on the 1st of October, 1855, at Castleton, gave them notice that he should not thereafter exchange any of such bank bills for funds current in Boston or New York; and that on or about the 16th of November, 1855, the plaintiff's agent in New York refused to exchange a package of $600 of said bills, and that the plaintiff, on or about the 23d November, 1855, at Potsdam, refused to exchange another package of $900 of such bills. These statements in the answer are not denied in the plaintiff's affidavit made in opposition to this motion; and the affidavit of Foster, the plaintiff's agent in New York, is confined to a denial of his refusal to redeem the package of $600 of said bills. The defendants, Ainsworth & Hunt, in their answer, deny that they have threatened to sell, or that they intended to sell, the logs without consulting the plaintiff in relation thereto, or in violation of the terms or conditions of the agreement. The affidavit of Hewitt, annexed to the complaint, to the effect that the defendant Ainsworth offered to sell him the logs at Potsdam, is not inconsistent with the denial in the answer; as the defendants, Ainsworth & Hunt, have a right, under the agreement, to sell the logs, in case the plaintiff refuses to exchange the bills advanced to him by them, provided they accord to him the right to purchase at the highest price offered by any other person. If Ainsworth & Hunt have, under this agreement, acquired the right to sell a sufficient quantity of the logs to repay their advances, in consequence of the refusal of the plaintiff to exchange the bills of the Bank of Castleton as required in the agreement, which refusal is shown by the answer, that right cannot be defeated because the sale would be prejudicial to the plaintiff. The injunction order cannot therefore be sustained on the

ground of an intention on the part of the defendants, Ainsworth & Hunt, to sell to third persons a sufficient quantity of the logs to repay previous advances, after offering to the plaintiff to allow him to become the purchaser, for the highest price offered by any other person. If it had appeared that Ainsworth & Hunt intended to violate the agreement by a sale of the logs, to the prejudice of the plaintiff, it is questionable whether an injunction could have been issued to restrain them, unless it should be shown that they were irresponsible, as the plaintiff would have a perfect remedy by an action for damages, against them. (*Willard's Eq. Jur.* 279, 364.)

The remaining question to be considered is, whether the agreement is void for usury. In discussing this question the first point to be considered is, whether the transaction between the parties was or was not a contract for a loan of money. In the agreement the plaintiff agrees to cut 50,000 pine logs from townships 22 and 25 in Franklin county, and to deliver them to the defendants, Ainsworth & Hunt, on certain lakes and ponds and on the Racket river, and to drive them down such river to the saw mill pond of the plaintiffs, and to saw out such logs for Ainsworth & Hunt. In consideration whereof Ainsworth & Hunt agree to pay and advance to the plaintiff, at the execution of the agreement, $3000, and thereafter, at different times, in the whole, 50 cents for each log driven into said pond; and also the further sum of $1.25 for every 1000 feet for all boards and lumber sawed by the plaintiff; Ainsworth & Hunt to retain 10 cents so to be advanced, for each log, until the deduction amounted to the $3000 to be advanced by them to the plaintiff; and all payments and advances were to be made by Ainsworth & Hunt in the bills of the Bank of Castleton, so long as said bank continued to redeem in Boston or New York, &c.; and the plaintiff was to exchange such bills for funds current in Boston or New York, after they had been returned to the bank and were presented to him, &c. Ainsworth & Hunt were to use their best skill in selling the lumber at the highest prices, &c. and all proceeds of the sales were to be applied, in the first instance, towards repayment of all advances of Ainsworth & Hunt,

with interest, and of the expenses of the sale; and the balance was to be paid by Ainsworth & Hunt to the Bank of Castleton upon the plaintiff's prior indebtedness to such bank. And in such agreement Ainsworth & Hunt agreed to bestow their time and services in the business, either in measuring, &c. the logs, &c. or in the sale of the lumber, for which they were to be paid by the plaintiff $1000 each, for the year, &c. Concurrently with this agreement the plaintiff conveyed to Ainsworth & Hunt his interest in said townships 22 and 25, being about 4000 acres of timber lands, from which the 50,000 pine logs were to be cut.

The question to be determined is, whether this agreement is a contract for the loan of money. It is insisted, on the part of the defendants, that the agreement on its face, in connection with the conveyance of the 4000 acres of land, is substantially a sale and conveyance of the timber lands and logs to Ainsworth & Hunt, by the plaintiff, and an agreement on the part of Ainsworth & Hunt to pay the plaintiff for his work and labor in cutting and removing and driving the logs to the saw mill of the plaintiff, and manufacturing the same into boards and lumber, 50 cents for each log, and the further sum of $1.25 for every 1000 feet of boards and lumber; with an agreement on the part of Ainsworth & Hunt to apply the purchase money of the lands and logs (being the proceeds of the sales of the lumber and logs) towards the repayment of the advances made by Ainsworth & Hunt, with interest and the expenses of the sales, and to pay the balance to the Bank of Castleton on the previous debt owing to it by the plaintiff; and an agreement on the part of the plaintiff to pay Ainsworth & Hunt $1000 each for their time and services in the business and in the sale of the lumber.

Perhaps the agreement might more properly be regarded as in substance and legal effect a conveyance or an assignment to Ainsworth & Hunt, in trust, of the timber lands and logs, to cut and manufacture the logs, to sell the boards and lumber, and out of the proceeds of the sales to repay themselves their advances, and to pay the expenses of the getting out and manufacturing of the logs, and of the sales of the lumber, and $1000 to each for their services; and to pay the balance on the pre-

Pomeroy *v.* Ainsworth.

vious debt of the plaintiff to the Bank of Castleton. There is nothing expressly stated in the agreement, in relation to a loan of money; and the defendants, Ainsworth & Hunt, in their answer, deny that the plaintiff applied to them for a loan of money, or that they agreed or proposed to loan him any money, as alleged in the complaint. This allegation in the answer is confirmed by the affidavits of three witnesses who were present during the negotiation and at the execution of the agreement. These witnesses swear that there was no application or proposal by the plaintiff for a loan of money, and that neither party expected or intended to make or obtain a loan of money. If the transaction, however, although not in form a contract for a loan of money, was nevertheless intended as such loan, and the form in which it was clothed was devised as a mere cover for usury, it cannot escape condemnation as a violation of the statutes of usury. To constitute a usurious contract there must be, 1st, a loan, and 2d, an agreement to pay illegal interest; and it is essential to the nature of a loan that the thing borrowed is at all events to be returned. Where the principal is bona fide put in hazard it is no loan; and it is no usury to take more than legal interest. (*Ord on Usury*, 23, 39, 64. *Com. on Usury*, 56, 4 *Law Lib.* 2 *Peters*, 537.) It is also essential to the nature of usury, that a certain gain exceeding the legal rate of interest is to accrue to the lender as a consideration for the loan. If the gain to the lender, beyond the legal rate of interest, is made dependant on the will of the borrower, as where he may discharge himself from it by the punctual payment of the principal, the contract is not usurious. (*Ord on Usury*, 48, 49. *Kelly on Usury*, 76, 44 *Law Library*.)

The cases of *Hall* v. *Daggett*, (6 *Cow.* 653,) and of *Quackenbush* v. *Leonard*, (9 *Paige*, 339,) expressly affirm the principle, that it is essential to the nature of a loan that the principal is at all events to be returned. In *Hall* v. *Daggett*, Daggett agreed with Hall to carry on the business of preserving fresh provisions, and in consideration of the use of $600 advanced by Hall, Daggett made him his only agent for selling the provisions, for 10 years, and agreed that he should be allow-

ed 20 per cent on all sales, and one third of the net proceeds after deducting the 20 per cent to apply on the amount advanced till it should be liquidated; Hall to furnish a repository at his own cost, and to be responsible for the sales; and it was held that the contract was not usurious. One reason assigned for the decision was that Hall's principal was put at hazard, as his security for its repayment was confined to the proceeds of the sales, and they might prove insufficient to reimburse him. In *Quackenbush* v. *Leonard*, (9 *Paige*, 346,) three persons, Leonard, Quackenbush and Webster, agreed to purchase lands, for their joint benefit, and they also agreed that Leonard should advance all the money upon the purchase, to be refunded out of the proceeds of the sale only, and that he should receive more than one third of the land or the proceeds thereof. Held that the agreement was not a contract for a loan or forbearance of money, and was not usurious. The decision was placed expressly upon the ground that there was no agreement on the part of Quackenbush and Webster to refund any part of the purchase money advanced by Leonard, if the lands should not sell for enough to reimburse him, with interest. The case before the court resembles the cases of *Hall* v. *Daggett*, and *Quackenbush* v. *Leonard* in this, that there is no agreement on the part of the plaintiff to repay Ainsworth & Hunt their advances in case the proceeds of the sales of the logs and lumber should be insufficient for that purpose. The security of Ainsworth & Hunt for repayment is upon the logs and lumber only. As the logs and lumber may turn out to be insufficient to reimburse them, it cannot be said that the principal money to be advanced was to be repaid at all events ; that it was not put at hazard.

If it was in the power of the plaintiff to discharge himself from the burden or loss of exchanging the bills of the Bank of Castleton, (in which it is alleged the usury consists,) by repaying to Ainsworth & Hunt, on account of their advances, an amount equal to the bills presented to him to be exchanged, it might be also objected to the charge of usury in this case that here there was no certain gain, beyond legal interest to accrue to Ainsworth & Hunt as the consideration for their advances.

(7 *Mass. Rep.* 433. 19 *John.* 334, 335, 336, *and cases cited.* 8 *Mass. Rep.* 259. 10 *id.* 284.)

But if the agreement was a contract for a loan of money, and if, according to the laws of New York, it is usurious, it can nevertheless be sustained in this state if it is to be construed according to the laws of Vermont, and if under those laws it is a valid agreement. The pleadings and affidavits show that the agreement was negotiated, made and executed in Vermont, and that the defendants, Ainsworth & Hunt, reside in Vermont, and that the Bank of Castleton is a bank located and doing business in that state. The defendants, Ainsworth & Hunt, in their answer allege that at the time of the execution of the agreement it was intended that the lumber, or a greater portion thereof, would be sent, for market, to Boston and other places in New England; and three witnesses, whose affidavits were read by the defendants on the hearing of the motion, state that the rate of interest which Ainsworth & Hunt would receive, if any, for their advances under the agreement, was spoken of during the negotiation by the parties, and that it was intended and understood by all of them that such interest would be computed according to the laws of Vermont, at the rate of 6 per cent per annum. This evidence must outweigh the unsupported statement of the plaintiff, in his affidavit, that the rate of interest was not mentioned in any part of the negotiation. It is conceded that the first $3000 was advanced by Ainsworth & Hunt to the plaintiff in Vermont. If the plaintiff was in error as to the conversation, during the negotiation in respect to the rate of interest, he may have been equally mistaken in his statement that it was understood and contemplated at the time of making the contract, that the money to be advanced by Ainsworth & Hunt, except the first $3000, should be both advanced and repaid in New York. The plaintiff, in his opposing affidavit, does not deny the allegation in the answer, that at the execution of the agreement it was intended that the lumber should be sent for market to New England.

The pleadings and affidavits, therefore, establish the following facts, viz : The agreement was negotiated, made and exe-

cuted, in Vermont; the defendants now reside in Vermont, and resided there at the time of the execution of the agreement; $3000 was advanced, under the agreement, by the defendants, Ainsworth & Hunt, to the plaintiff, in Vermont; the parties, at the execution of the agreement, agreed that the interest on the advances of Ainsworth & Hunt should be computed according to the laws of Vermont, at the rate of 6 per cent per annum; at the execution of the agreement it was intended by the parties that the lumber, or the greater part thereof, should be sold in some one of the New England states. The work and labor of the plaintiff in getting out, and in the manufacture of, the logs, were to be performed in New York; and the services of Ainsworth & Hunt in the measuring and marking the logs, and the care of the lumber at the saw mill, were to be rendered in New York; but so far as they consisted in making sales of the lumber, they were to be rendered in the places where such sales were made. The agreement being silent as to the places where the advances subsequent to the execution of the agreement were to be made, to the plaintiff, and where they were to be repaid to Ainsworth & Hunt out of the proceeds of the sales of the lumber, the law must determine them. It is a settled principle, where no place of payment is mentioned in the contract, that its legal construction is, that the money is to be paid to the creditor where he resides, or wherever he may be found. (6 *Paige,* 630. 10 *Wheat.* 367. 2 *Parsons on Cont.* 95, 99.) Applying this principle to the agreement in question, I think we ought to expound it as requiring Ainsworth & Hunt to make the advances (after the payment of the $3000) to the plaintiff in New York, where his labor is to be performed and where he resides; and as implying that the proceeds of the sales of the lumber are to be received by Ainsworth & Hunt at their residence in Vermont, and to be applied by them in that state in repayment of their advances, and on the debt of the plaintiff to the Bank of Castleton.

As a general rule the law of the place where contracts purely

personal are made, must govern as to their construction and va-
lidity, unless they are to be performed in another state or country,
and were made in reference to the laws of such state or country,
in which case their construction and validity depend upon the
law of the place of performance. (6 *Paige,* 630. *Story on
Confl. of Laws,* § 242. 2 *Kent's Com.* 7th ed. 577, *note a.*
2 *Parsons on Cont.* 95, 96. 1 *Cowen,* 108. 2 *Burr.* 1077.
*Story on Contracts,* §§ 653, 654. 10 *How. Pr. R.* 8. 4 *Cow-
en,* 510, *note.* 17 *John.* 518.) If no place of performance is
expressly stated, or implied from the terms of the contract, the
law of the place where it was made will govern. (*Story on
Confl. of Laws,* § 282.) If a contract is to be performed part-
ly in one country and partly in another, each portion is to be
interpreted according to the laws of the country where it is to
be performed. (*Story on Cont.* § 655. *Story on Confl. of
Laws,* §§ 282, 284.) Where a contract for the payment of
money is made in one place, and payment in another, and no
interest is expressed in the contract, the interest is to be gov-
erned by the law of the place where it is payable. (*Story on
Confl. of Laws,* § 291. 2 *Parsons on Cont.* 95, 96, 98.) If
the advances, therefore, by Ainsworth & Hunt to the plaintiff
are in law payable to them in Vermont, the interest on such
advances is to be regulated by the laws of that state ; and the
usury laws of such state must govern the construction of the
contract, at least so far as it relates to the moneys due and
payable to Ainsworth & Hunt.

But I think the agreement, or the expressed understanding
of the parties at the time of the execution of the contract, that
the rate of interest should be regulated by the laws of Ver-
mont, is decisive upon the question of usury. In *Chapman* v.
*Robertson,* (6 *Paige,* 634,) it was held by Chancellor Wal-
worth that upon a contract for a loan of money, made in one
country and payable in another, the parties might stipulate for
the payment of interest according to the laws of the place
where the contract is made. A like decision was made in *De-
peau* v. *Humphreys,* (20 *Martin's La. Rep.* 1,) in *Peck* v.

*Mayo*, (14 *Verm. Rep.* 33,) and in *Pratt* v. *Adams*, (7 *Paige*, 632.) In this latter case, the chancellor says, if the contract is not illegal by the laws of the country where it was made and the money loaned, the fact that drafts on which the loan was made were payable in New York, will not render them void under our usury laws. *Parsons*, in his *Treatise on Contracts*, (*vol.* 2, *p.* 95,) sustains the principle of these cases.

In the present case, the parties made the agreement express-ly in reference to the laws of Vermont, as to interest ; and those laws must therefore govern its construction, and deter-mine its validity, at least so far as respects the question of usury. (6 *Paige*, 630, 634. 2 *Parsons on Cont.* 95. 14 *Verm. Rep.* 33. 2 *Kent's Com.* 7*th ed.* 576, 577, *note a.*) In all questions in relation to usury, parol evidence is admissible to establish or rebut it. (*Cowen & Hill's Notes*, 1447.) As the laws of Vermont are to govern the construction and deter-mine the validity of the agreement, in respect to the amount of interest agreed to be paid, the plaintiff, as he alleges the illegality of the agreement, must show what are the laws of Vermont, in relation to usury. In the absence of such proof, the presumption is that the agreement is a valid agreement, under those laws. (7 *Paige*, 632. 1 *id.* 220. 2 *Seld.* 134.) Suspicion, alone, will not invalidate a contract. (*Per Gardi-ner*, *J.* 2 *Seld.* 134. *Cowen & Hill's Notes*, 1136, 1138, 1139.) It is a general rule that a party seeking advantage from a for-eign law, or the law of another state of the union, must prove its existence. (*Cowen & Hill's Notes*, 1136. 3 *Dana's Rep.* 495. 8 *John.* 189, 193.) It seems, however, that upon a mere common law question, the legal presumption is that the common law of a sister state is similar to that of our own. (10 *Wend.* 75.)

Having arrived at the conclusion that the agreement, at least so far as respects the amount of interest to be paid to the de-fendants, Ainsworth & Hunt, for their advances to the plaintiff, was made in reference to the laws of Vermont, and that it requires the advances of Ainsworth & Hunt to be repaid in that state, such agreement must be presumed to be legal, by the laws of

Vermont, as the contrary has not been shown by the plaintiff. And if legal by the laws of Vermont, it is protected from the operation of the usury laws of this state.

I must therefore decide that the injunction order be vacated.

[Fulton Special Term, April 1, 1856. *Paige,* Justice. Affirmed by the General Term, September, 1856. *C. L. Allen, Paige, James* and *Rosekrans,* Justices.]