Gilmore, J.
The question under the first assignment of error, arises out of the conflict of the laws of Ohio and Pennsylvania relative to the lfegal rate of interest. Its determination has been greatly aided by the ability with which it has been discussed and presented on principle and authority. It is conceded by counsel for plaintiff in error, that the authorities are conflicting on the subject, and this is apparent from an examination of those cited.
It is observable, however, that but few of the cases cited decide the precise question here presented. Some of them present questions of fact as to where the contract was executed, which had to be determined before the law was applied. Others are cases in which a note bearing interest, but no rate stipulated, was made in one country and payable in another, the laws of which were in conflict on the-subject of interest; and the question was whether the rate of interest in the country where the contract was made, or that in which it was to be performed, should control. - In others, notes which did not bear interest till due, were made in one state and by their terms payable in another, where there was like conflicts in the laws, the question was, whether 'damages allowed for detaining the money after it was due, should be measured by the rate of interest at the place the contract was made, or that at which it was to have been performed. As the decisions in these cases, and others referred' to which are not directly in point, would throw bnt little light on the question here, a review of them will not be attempted.
But coming to another class of authorities more directly in point, and in which there is likewise a conflict, we are *418 left to decide between them. According to some of these authorities, if a note is made payable at a designated place, it must in respect to interest, conform to the law of the place of payment, without reference to the place where it was made or signed.
According to others, if a note is made in one state and payable in another, and the interest laws of such%tates are in conflict, the laws of either state may be applied; in other words, that such a note may have two different places the laws of which may enter into its construction.
This latter view is supported hy a few authorities directly in point, and which, in our opinion, establish the rule that ought to be followed.
In Depaw v. Humphreys, 10 Martin (La.), p. 1, the note was given in New Orleans, payable in New York, for a large sum of money, bearing interest at ten per cent., being legal interest in Louisiana, the New York legal interest being seven per cent. only. The question was whether the note was usurious, and therefore void, as it would be, if made in New York. The Supreme Court of Louisiana decided that it was not usurious and that, although the note was made payable at New York, yet the interest might be stipulated for, either according to the law of Louisiana or according to that of New Y¿>rk. The court expressly said: “ That in a note executed here (New Orleans) on a loan of money made here, the creditor may ■stipulate for the legal rate of interest authorized by our •law, although such a rate be disallowed in the place (New York) at which payment is to be made.” This is the exact ■question here. In Peck v. Mayo, 14 Vermont, 33, the notes sued on were made at Montreal, Canada, where the makers .resided, payable in Albany, New York. The lawful rate of interest in Montreal was six per cent., and in New York seven per cent, per annum. Redfield, J., in delivering •the opinion of the court, after an examination of all the ■authorities, said: “ If a contract be entered into in one place to be performed in another, and the rate of interest .differ in the two countries, the parties may stipulate for the *419 rate of interest of either country, and thus, by their own express contract, determine with reference to the lair of which country that incident of the contract shall be decided.” In Chapman v. Robertson, 6 Paige, 627, the plaintiff resided in England, where the legal rate of interest was lower than in New York, where it was seven per cent, per annum. The contract for the loan was made in England, but the bond was to be secured by a mortgage on lands in New York, and the arrangement made and carried out was, that Robertson was to execute the bond bearing seven per cent, interest, and execute and record the mortgage securing it in New York, and then forward them to England, where Chapman placed the amount of the bond with Robertson’s banker to his credit. It was held that this transaction -was not usurious.
Erom these authorities, and on principle, we are of opinion that Kilgore and Dempsey had a legal right to contract with reference to the laws of either Ohio or Pennsylvania, as they might in good faith agree, and that the note made in Ohio, by which Kilgore agreed to pay ten per cent, interest and principal at Philadelphia, where six per cent, was the legal rate of interest, was not, therefore, usurious. The demurrer to this defense was properly sustained.
Under the second assignment of error, the question is, did the court err in sustaining the demurrer to the amended second defense set up in the answer ?
This defense and the amendment to it, are of such length that it is impracticable to give even an abstract of all that they contain in the way of statement of facts, deductions, inferences, arguments, and conclusions intended to show that the note was made payable in Philadelphia, to enable Dempsey to indirectly obtain oue per cent., being the premium on exchange, in favor of the East as against the "West, in addition to the rate of interest stipulated for, which it is alleged, was a shift or device to obtain more than ten per cent, interest. The conclusion of this amended answer is as follows : “ Defendant avers that the foregoing facts, circumstances, and considerations, were all well known and *420 understood by both the said Dempsey and this defendant at the time of said loan, and influenced and caused the.making of said note payable in the city of Philadelphia, and that in fact the same was thus made payable as a mere shift or device to require this defendant to pay, and that the said Dempsey might receive, a greater rate of interest than ten per cent, per annum, payable semi-annually, for the money thus loaned, and further says, that the said agreement of loan as caused and influenced by the considerations aforesaid was, and .is, corrupt, usurious, and void in law.”
There is no colloquium — nothing averred to show that the parties did not include in the note everything that was ever said or agreed to between them.
Admitting then, as the demurrer does, that all the averments of the amended answer are true, do they constitute a defense ? The law on the subject is, as it is claimed by counsel for Kilgour, viz., that the usury laws can not be evaded by shifts or devices, and these may be established by proving facts from which the purpose may be inferred, as in the Muskingum Bank case, 12 Ohio, 545, “where Spaulding requested the bank to get money belonging to the state from the Fund Commissioners, agreeing with the bank that if it did so, he would borrow it from the bank, and pay not only legal interest on the money, but also five per cent, in addition as commissions. The bank got the money and loaned it to Spaulding on these terms. It was held that the arrangement was an illegal shift and device to obtain more than legal interest, and thex'efore usurious.” So, “ where a bank in Buffalo discounted a draft dated there, but drawn on a pax’ty in New York City, axxd payable at the latter place, and in addition to legal interest, deducted a half per cent, as charges for collection, at a time whexr the draft was wox'th at Buffalo a half per cent, premium, the traxxsaction was held to be a device to get more thaxx legal interest,”
These cases illustrate what shifts or devices are, and the facts from which they will be inferred or presumed. Of course their name is legioxi; but whatever they may be, they must enter into and be of the substance of the contract at the time it is made., to make it usurious. In this case it *421 appears from indorsements on the note, that no interest was paid till long after the note was dne, and it matters not what the parties may have done years afterward, in continuing or extending the time of payment of the loan, such subsequent acts will not affect the original transaction and render it usurious, if it was not so when entered into.
After carefully looking into all the averments of the amended answer, we can not see wherein the loan was in any respect usurious. "We have found above, that the note on its face is not so, and as has been said, there is no averment showing that the parties made or consented to any particular mode of performance, other than that named in the note. Instead of Kilgore being compelled to pay the interest in Philadelphia by exchange, he was at liberty to pay in any other mode that he pleased. He could have taken the money himself, sent it by the hand of a friend, or by express, and for anything that appears by averment to the contrary, Dempsey would have been bound to accept any money that was a legal tender. Besides, even if he did procure exchange, for which he had to pay a premium, and forward the same to Philadelphia, the premium was paid to the.banker of whom he purchased the exchange, and not to Dempsey, nor is it averred that the exchange was worth more than its face at Philadelphia; and when this was the case, we can not see how Kilgore could derive any advantage or suffer disadvantage from the use that Dempsey might afterwards have made of it. We do not think we are required to notice all the averments that are made as to the manner the parties dealt with each other in reference to the interest paid during the thirteen yeai's that elapsed after the note matured and before suit was brought. It is enough to say that the averments of the amended defense, do not show any shift or device, at or before the date of the note, that makes it usurious.
The demurrer was, therefore, properly sustained to this defense.
The District Court did not err in affirming the Common Pleas. Motion overruled.
McIlvaine, C. J., Welch, White, and Rex, JJ., concurred.