## CHARLES HEEBNER *vs.* EAGLE INSURANCE COMPANY OF CINCINNATI.

A policy of insurance on a ship against " total loss only," even if a time policy, covers a constructive total loss.

It is a sufficient abandonment of a ship injured by perils of the sea, and therefore surveyed and condemned on the west coast of the United States, in time of peace, to state in a notice to the underwriters that the assured "having received information of the condemnation of" the ship "at Humboldt, California, hereby abandons all in said vessel insured by" their policy "and claims as for a total loss."

A policy of insurance from an insurance company established in another state, signed by their president and secretary there, but not to be valid until countersigned by their agent here, and issued by such agent here, is to be interpreted by the law of Massachusetts; and one third new for old is therefore to be deducted in estimating a constructive total loss under it.

Under a policy of insurance upon a steamer, which exempts the insurers from liability for breaking of the machinery unless occasioned by stranding, the insurers, if the vessel is injured first by perils of the sea and afterwards by stranding, are liable only for so much of the injury as the assured prove to have been occasioned by the stranding.

In computing a constructive total loss on a vessel stranded on the west coast of the United States, an assessor allowed two months' interest on the funds raised for repairs. *Held,* that this assessment could not be increased by the court without evidence to overcome the assessor's report.

ACTION OF CONTRACT on a policy of insurance, numbered 105, and dated July 15th 1850, for $5000 on the Steamer Chesapeake, valued at $40,000, for one year from the 24th of May 1851, "to trade on the west coast of America, and the rivers of the west coast and the islands of the Pacific Ocean," against "total loss only," and containing a stipulation "that in case a total loss shall be claimed for or on account of any damage or charge to the said vessel, the only basis for ascertaining her value shall be by her valuation in this policy, and if not valued herein, then her actual value at the port to which she belonged at the time of the inception of this risk."

The steamer sailed from San Francisco on the 24th of September 1851 for Humboldt Bay and other ports on the Pacific coast, and after meeting with severe injuries from perils of the sea, and making all possible repairs at intermediate ports, arrived on the 16th of October at Humboldt Bay, where her captain called a survey, which was made; and, at the request of

her captain, a shipmaster of San Francisco made an estimate of the repairs necessary to be done to make her seaworthy, which was based entirely upon the surveyor's report, and amounted to $22,951, including the expenses of bringing men and materials from San Francisco.

Humboldt is a very small settlement, containing about thirty inhabitants, with no means of repairing vessels. By the travelled route it is between three and four hundred miles distant from San Francisco, where repairs could have been done at from twenty to twenty five per cent. less. One of the surveyors testified that the steamer was not in a condition to go with safety to San Francisco.

In compliance with the report of the surveyors, the steamer was sold by auction at Bucksport, in Humboldt Bay, about the 1st of November, for $2175. Written notices of the sale were posted up in all the towns around the bay. There were from twenty to thirty persons present at the sale.

On the 6th of February 1852 the assured signed and addressed to the agent of the defendants at Boston the following letter : " Having received information of the condemnation of the Steamer Chesapeake at Humboldt, California, I hereby abandon all in said vessel insured by policy of the Eagle Insurance Company of Cincinnati, No. 105, dated July 15, 1850, for $5000 ; and claim as for a total loss."

The parties agreed that if the court should be of opinion that " under this policy and the facts stated, the plaintiff could recover for a constructive total loss, the case is to be sent to an assessor, to ascertain whether the actual cost of repairs would exceed half the valuation, so as to create a liability therefor on the part of the defendants, and the amount for which judgment should be rendered against them ; otherwise, the plaintiff is to become nonsuit." Upon this statement the case was argued at November term 1855.

*G. S. Hillard,* for the plaintiff.

*F. C. Loring,* for the defendants. 1. By the terms of this policy the standard of value is the valuation in the policy, and this accords with the law of this state. *Deblois* v. *Ocean Ins.*

*Co.* 16 Pick. 303. Under a policy against total loss only, the insurer is not liable for a constructive total loss by reason of damage exceeding fifty per cent. of the value of the ship, and which is in fact only a partial loss, though it may be turned into a total loss by the election of the assured to make an abandonment. *Smith* v. *Manufacturers' Ins. Co.* 7 Met. 448. If the assured had elected to repair, the insurers clearly would not have been liable under this policy, whether the extent of the repairs was less or more than fifty per cent. The liability of the insurer cannot be entirely at the election of the assured. Insurance against " total loss only " is the same as " warranted free from average or partial loss." An insurance on a cargo "against total loss " or " free from average " does not cover a constructive total loss. 2 Phil. Ins. (3d. ed.) §§ 1615, 1767. *Marcardier* v. *Chesapeake Ins. Co.* 8 Cranch, 39. *Moreau* v. *United States Ins. Co.* 1 Wheat. 219. By analogy the same rule must apply to vessels where the damage is less than the value of the vessel. This question was decided by this court many years ago, and the decision has not been questioned since. *Murray* v. *Hatch,* 6 Mass. 465. *Buchanan* v. *Ocean Ins. Co.* 6 Cow. 331.

2. The letter of abandonment is defective, in form and substance; because it states no reasons for abandonment, except that the vessel has been condemned; and neither states the grounds of condemnation, nor gives the insurers any means of ascertaining them. *Peirce* v. *Ocean Ins. Co.* 18 Pick. 83. *Bullard* v. *Roger Williams Ins. Co.* 1 Curt. C. C. 152. *Macy* v. *Whaling Ins. Co.* 9 Met. 359. *Suydam* v. *Marine Ins. Co.* 1 Johns. 181. 2 Phil. Ins. §§ 1681, 1684.

SHAW, C. J. Two questions are presented; first, whether the plaintiff can recover for a constructive total loss ; and second, whether the plaintiff gave a seasonable and sufficient notice of abandonment.

1. The first question is, whether, under this policy, the defendants are liable for a constructive total loss, caused by the perils insured against, to more than half the value of the vessel.

The natural and grammatical construction of the language, " liable for a total loss only," is, any total loss, as that term is

known and understood by those conversant with the practice and law of insurance. The distinction between an actual and constructive total loss is well known and understood; and if the parties intended to qualify it, and limit the liability to either particular species of total loss, we think they would so have expressed it. But there is nothing in the policy to indicate that the insurers are not to be liable for a constructive total loss, if perfected as such by an abandonment; and we see nothing in the principles of the law of insurance, from which such a distinction can be implied against the letter of the contract.

The leading authority relied on is that of *Murray* v. *Hatch*, 6 Mass. 465. It is observable that that was an insurance on vessel, cargo and freight, and against a total loss only. The vessel remained *in specie*, capable of being repaired, a few days' sail from the United States, and there was no abandonment. The case was argued and considered on the assumption that there was no abandonment; but the plaintiff insisted that, upon the facts then appearing, there was a total loss without abandonment. There was no adjudication, therefore, upon the proposition that, in an insurance on vessel against total loss only, proof of a constructive total loss will not sustain the action. It is admitted by the eminent judge who gave the opinion, Mr. Justice Sewall, that no precedent like it had been cited; but his reasoning is founded upon the supposed analogy between the restriction in this policy and the cases of exceptions and warranties against particular averages and partial losses on certain goods, as illustrated by reference to the case of perishable articles, embraced in the common memorandum, being excepted from liability for losses on account of sea damage. These exceptions are manifestly founded on the impossibility or extreme difficulty of distinguishing, in the memorandum articles, damage arising from sea perils, and that arising from the natural tendency of the articles themselves to natural decay or deterioration. All the cases cited are those of perishable goods, whence he draws the conclusion that in cases arising under exceptions of particular average, or warranty against partial losses, the insurer is liable only for a total loss, where the sub-

ject matter of the insurance is absolutely destroyed. The opinion is there expressed that where the policy is limited, as in that case, to be upon the risk of a total loss only, the same principles must govern the decision. The reasoning upon the evidence there goes to show that the vessel remained *in specie*, was capable of being repaired, and according to one statement might have been repaired for less than half her value as expressed in the policy, and the court decide that the evidence did not prove an actual total loss. There was also a sufficient reason for setting aside the verdict of the jury and ordering a new trial, that in finding for the plaintiff for a total loss, they had not deducted the salvage held by the plaintiff.

This case was no doubt decided right, because the assured had not complied with the indispensable condition of fixing a constructive total loss, where the loss was not absolutely total in its nature, by a seasonable abandonment. This case was cited in the case of *Buchanan* v. *Ocean Ins. Co.* 6 Cow. 331; but that was a case where the court had first decided that the plaintiff had no insurable interest, and where of course nothing would have passed to the underwriter by an abandonment. And the point was not necessary to the decision of the case then before the court.

The distinction between damage to goods to more than half their value, and damage to a vessel to more than half her value, as giving a right to abandon, and laying the foundation for a constructive total loss, is well illustrated by the case of *Marcardier* v. *Chesapeake Ins. Co.* 8 Cranch, 39. There it was held, that where a constructive total loss is sought to be maintained, upon the ground of deterioration of the cargo, by some of the perils insured against, to more than half its value, all deteriorations of memorandum articles are to be excluded from the estimate of damages; and that, in order to establish such a constructive total loss, damage from the perils insured against must be found to have been sustained by the residue of the cargo, as if the whole of the memorandum articles were sound, to warrant an abandonment. This construction is obviously necessary to carry out the rule that the insurers are to be exempted from

all losses on memorandum articles, unless of a general nature specified, as by capture or stranding; and is plainly founded on the impracticability of proving whether the damage found in these perishable goods be attributable to perils of the sea, or to internal causes.

But we think this case establishes the principle that damage to more than half the value by sea perils to goods not in the memorandum, and *a fortiori* damage to a ship by perils of the sea to a like amount, does amount to a constructive total loss, and at the election of the assured, by a regular abandonment, becomes a legal total loss. That the distinction is limited to memorandum articles seems to be recognized in *Moreau* v. *United States Ins. Co.* 1 Wheat. 219, and the cases there cited and referred to.

There seems to be no reason in the nature of the contract, or of the business to which it refers, why the liability of the insurers should not extend as well to a constructive, as to an actual, total loss. It is true that no voyage is lost or defeated, because no voyage was in contemplation, it being a policy on time; but by the perils insured against, all further navigation of the vessel was defeated and put an end to, the whole purpose of the enterprise, that of employing the vessel in profitable navigation during the year, was defeated. The court are therefore of opinion that under this policy the defendants were liable for a constructive total loss by the perils insured against, if followed by a legal abandonment.

2. The next question turns upon the form, legal effect and sufficiency of the notice of abandonment.

It appears by the evidence that the vessel was damaged by the violence of the sea and stress of weather, and was at a small port on the western coast of America, and the evidence tended to show that, if she could be repaired there, the expense of such repairs, after making the customary and stipulated deductions, would amount to more than half her value as expressed in the policy. Damage of a vessel to more than half her value, as a ground of abandonment and constructive total loss, seems now to be settled as the rule of American law, conformably to

that of some of the maritime states of Europe, contrary to the English rule, which requires proof of damage to such an extent that the repairs of the vessel in the place where it is would be equal in amount to the value of the vessel when repaired. *Marcardier* v. *Chesapeake Ins. Co.* 8 Cranch, 39. The master called a survey, and, in compliance with the report of the surveyors, sold the steamer at auction at Humboldt Bay. These things occurred early in November 1851; and on the 6th of February following notice of abandonment was given by letter by the plaintiff to the agent of the defendants, residing in Boston. In deciding on the character of this notice, we are to consider the relative situation of the parties, what they respectively knew and understood, and what was the subject matter of the communication.

The Chesapeake was a steamer, owned by the plaintiff, insured by the defendants about six months before, for no voyage to be made from one port or another to carry any particular cargo, but for the term of one year, at all ports and places, with the general purpose to trade on the west coast of America, insured against total loss only. The vessel was at a great distance from her home port by sea, but the communication by letter, by way of the Isthmus of Panama, was between one and two months.

The notice and offer of abandonment is certainly brief, and in a form not to be recommended; still the question is, whether it is sufficient. The difficulty lies in the ambiguity of the word "condemnation," as a cause of loss, accompanied by a demand for a total loss. The term, in its application to the subject matter, may import a hostile capture, and condemnation consequent thereon, but it may also mean that the vessel has been condemned as innavigable, as incapable of keeping the sea, on account of damage, and so declared by persons of competent authority. In several insurance cases, referred to in the course of this discussion for other purposes, we have seen the phrase, after describing the shattered condition of a vessel, "she was condemned to be sold." We are then brought to the question how it was used in the present case, what did the writer mean

12 *

in using it, and how was it understood by the agents and officers of the company.

It was a time of profound peace; the place was Humboldt Bay, on the west coast, described as in California, and of course within the limits and jurisdiction of the United States. The idea of capture and judicial condemnation as prize could hardly have arisen in the mind of the agent to whom this notice was addressed; and it is quite manifest that it was not so used by the writer. Under the circumstances therefore it must have been naturally understood that the vessel had been condemned as unfit for further purposes of navigation, according to the actual state of facts. Besides, it was not a positive assertion of the fact, but only " information," of course by letter; and if the company were actually in doubt, or desired fuller intelligence on the subject, it was only to ask for the letter, or other source of the information. It did not, and had no tendency to, mislead the company by stating one cause of loss, and afterwards attempting to recover by proof of loss from a different cause.

It was an explicit transfer and relinquishment of all the assured's right and interest in the vessel, in the proceeds if rightfully sold, and in any and all salvage which had been or could be obtained. In this respect it differs essentially from the case of *Peirce* v. *Ocean Ins. Co.* 18 Pick. 83, in which the abandonment was held insufficient, because it was a mere notice to the company of the state of the vessel, and did not by any of its terms relinquish, transfer and abandon claims for the proceeds of the vessel from the time of the loss, or other claims for salvage. The remarks made in giving the opinion in that case are made in reference to the subject matter and circumstances of the case.

A subsequent case, more analogous to the present, came before this court, and the question of the sufficiency of the notice of abandonment was fully considered. *Macy* v. *Whaling Ins. Co.* 9 Met. 354. The insurance was upon cargo, but the notice of abandonment was only that the ship was lost. But the court held that, under the circumstances, being a whaling ship, the loss of the cargo might well have been understood from the loss

of the ship; and the plaintiffs having in form abandoned their interest in the cargo insured by the defendants, the abandonment was not rendered invalid by the informality in the notice. And in another clause the court say, where the insured makes his abandonment and claims for a total loss, under the policy, without stating the cause of loss, but refers to the intelligence he has received, the abandonment will not be defective, because the underwriter can call for the information on which it is grounded.

No form of abandonment is established either by law or the usage of this branch of business. Any form therefore, which gives the underwriters information of the nature of the loss by one of the perils insured against, and of the readiness of the assured to abandon all rights, interests and claims to the subject of the insurance, and the avails and proceeds thereof, is sufficient. In the present case, the assured, in their notice and offer of abandonment, by referring to their information of a fact which might have been caused by one of the perils insured against, and which the assured claimed was in fact so, by an explicit relinquishment of all rights to the vessel and the proceeds thereof, and all salvage, and by a demand for a total loss, gave the defendants notice or the means of knowing the nature and particulars of the loss as it actually existed; and as the company signified no desire to be put into possession of the information, the court are of opinion that the notice was sufficient.

*Case referred to an assessor.*

The assessor reported the amount of the loss as $18,638.31 The plaintiff excepted to his report in the following particulars:

1. " The defendants were a corporation established at Cincinnati in the state of Ohio. At the time the insurance was effected the plaintiff resided in Philadelphia, and employed a broker in Boston to procure this insurance. The defendants had an agent there duly authorized to make insurance contracts, who was furnished with blank policies, signed by the officers of the company, in which it was declared that they should not take effect until

countersigned by said agent. The contract was made, and the policy filled up, signed and delivered, in Boston. The policy did not contain the clause, common in Boston policies, that the insured may not abandon in case of damage, unless the amount made up as a partial loss should exceed one half of the valuation."

The plaintiff contended that the rule of a deduction of one third new for old, in cases of total loss, was peculiar to this commonwealth, and was therefore not applicable to this case. But the assessor refused to adopt this view.

2. In the face of the policy this clause was written : " It is understood that this company is not liable for any derangement or breakage of the machinery or bursting of the boilers, unless occasioned by stranding."

The only evidence upon this point was the following testimony of the captain : " The steamer did meet with an accident after leaving Umpqua and crossing the bar. She was struck on the starboard bow by a very heavy sea, giving the vessel stern way, and, the helm being hard-a-port, broke both of the rudder pintles, stove two boats and the bulwarks and stancheons, and did a great deal of injury to the engine and cabin, and ruined most of the stores. Had no cargo in at the time. After the rudder was carried away, the vessel was steered by the propellers, as well as we could, by backing on one and going ahead on the other; they being nearly useless, having been badly strained by the sea that struck the vessel. By this means, managed to keep off shore during the night. The wind becoming a little more fair the next day, made all possible sail for Port Orford. We left Port Orford on the 10th of October for Trinidad, and arrived there on the 12th. There being a very heavy swell heaving into Trinidad Bay, she dragged her moorings and struck on the rocks, remaining there from half to three quarters of an hour, striking heavily, breaking two of her planks, and otherwise straining her, and making her leak worse. We immediately got out a kedge and kedged her off, and found that she leaked worse than before."

The assessor's conclusion on this point was as follows · " It

may be fairly inferred from the evidence, that some damage was done to the machinery by the stranding ; but it is equally clear, I think, that the substantial injury, both to the hull and machinery was occasioned by the heavy sea by which the vessel was struck after leaving Umpqua. As the evidence stands, any estimate of the amount of damage done to the machinery by the stranding must be to a great degree a matter of conjecture I think that it will be going quite as far as, if not beyond, what the evidence will warrant, to estimate the damage thus occasioned as one fourth of the total amount of damage sustained by the machinery."

3. " The plaintiff claimed to add the cost of raising funds in California to meet the necessary repairs, at five per cent. pei month for three months, the time necessary for meeting drafts on the east. The defendants objected to this item, on the ground, that, as the steamer was insured to trade on the west coast of America, she must be considered as having been at a home port, and the owners were bound to be provided with all necessary funds there.

" Humboldt Bay, where the steamer lay, and where the repairs must have been made, if at all, as the steamer was not in a con dition to be removed, was a small settlement of twenty or thirty persons, about five hundred miles from San Francisco. The plaintiff then resided in Philadelphia, and the captain, who was the other part-owner, at San Francisco. Neither of them had any funds at Humboldt Bay, nor in San Francisco, except a small sum which the plaintiff had there in the hands of an agent, the proceeds of some goods sold on commission. The plaintiff was a man of large property, and in good credit at home, and the captain's means were very limited. The cost of raising the necessary funds at Humboldt Bay, or at San Francisco, would have been at least five per cent. per month."

" The charge of five per cent. per month, for two months, making ten per cent. on the amount necessarily expended, seems reasonable and is allowed."

The exceptions to the assessor's report were argued and decided at March term 1859.

*Hillard*, for the plaintiff. 1. The contract of insurance is a contract of indemnity, and is to be construed in such manner, if possible, as to give it effect. The Massachusetts rule of deducting one third new for old should not be applied to this case. The place of the contract is Ohio, and not Massachusetts. In the absence of any rule peculiar to Ohio, the rule of the supreme court of the United States should be applied. Story Confl. §§ 293 *b*, 299, 300 *b*, 301. *Chapman* v. *Robertson*, 6 Paige, 630. *Hyde* v. *Goodnow*, 3 Comst. 266. *Robinson* v. *Commercial Ins. Co.* 3 Sumner, 220. *Bradlie* v. *Maryland Ins. Co.* 12 Pet. 399. This policy has not the clause — that the insured may not abandon in case of damage, unless the amount made up as a partial loss should exceed one half of the valuation — introduced into the Boston policies since the case of *Peele* v. *Merchants' Ins. Co.* 3 Mason, 27. *Wood* v. *Lincoln & Kennebeck Ins. Co.* 6 Mass. 479. *Hall* v. *Franklin Ins. Co.* 9 Pick. 466. *Sewall* v. *United States Ins. Co.* 11 Pick. 90. *Winn* v. *Columbian Ins. Co.* 12 Pick. 278. *Deblois* v. *Ocean Ins. Co.* 16 Pick. 303. *Orrok* v. *Commonwealth Ins. Co.* 21 Pick. 456. *Reynolds* v. *Ocean Ins. Co.* 22 Pick. 191.

2. The assessor's apportionment or distribution of the damage to the machinery is arbitrary and conjectural, not warranted by the probabilities of the case, nor justified by the rules of evidence. For the plaintiff to show how much of the damage was caused by the stranding is practically an impossibility. But the plaintiff shows an injury by a stroke of the sea and an injury by stranding; the burden of proof then shifts to the defendants; they have an affirmative proposition to maintain, to wit, that a certain proportion of the damage was done by the stroke of the sea ; and the plaintiff is entitled to the benefit of a doubt. *Gray* v. *Gardner*, 17 Mass. 188. *Attleborough* v. *Middleborough*, 10 Pick. 378. *Powers* v. *Russell*, 13 Pick. 76. Exceptions of risk are to be taken most strongly against the insurer, for whose benefit they are intended. *Palmer* v. *Warren Ins. Co.* 1 Story R. 360. *Donnell* v. *Columbian Ins. Co.* 2 Sumner, 366. *Blackett* v. *Royal Exchange Assurance Co.* 2 Cr. & J. 244.

3. The plaintiff excepts to that portion of the assessor's report

which allows only two months' interest on the sum necessary to be raised. Three months' interest at least should be allowed, considering the remoteness of Humboldt Bay, and that it is geographically, though not politically, a foreign port.

*Loring*, for the defendants.

BIGELOW, J.   1. The contract of insurance was finally executed and delivered in this state. It was therefore a contract made here, and the law of this state is to govern its construction and interpretation, without any reference to the domicil of the corporation liable upon it. *Kennebec Co.* v. *Augusta Ins. & Banking Co.* 6 Gray, 208. By the well settled rule of law in this commonwealth, applicable to policies of insurance, where an injury is sustained by a vessel, the loss is not total unless the expense of repairs exceed fifty per cent. of the valuation in the policy, after the deduction of one third new for old. *Deblois* v. *Ocean Ins. Co.* 16 Pick. 314. On this point the report of the assessor is confirmed.

2. The sum allowed by the assessor for injury to the machinery is quite as large as the proof before him would warrant. The burden was on the plaintiff to establish the amount of his loss; and if two perils operated to cause an injury to the vessel, for one of which the insurers were liable, and from the other of which they were exempt, it was for the plaintiff to show definitely the amount of loss sustained by the peril insured against.

3. There are no facts in the assessor's report from which we can infer that any greater amount should have been allowed for interest on the sum raised to repair the vessel. *Orrok* v. *Commonwealth Ins. Co.* 21 Pick. 469. As the presumption is in favor of his finding, in the absence of countervailing proof, his report on this point must stand.

The result is, that the plaintiff's exceptions to the assessor's report are overruled, and he fails to show a constructive total loss, and cannot recover in this action.

*Judgment for the defendants.*