## BENTLEY *vs.* WHITTEMORE.

1. Where a resident of another state, by a preferential assignment valid there, conveys all his property to assignees, for the benefit of his creditors, and includes in it lands in this state, the assignment is void as to the lands in this state, and a purchaser from the assignee acquires no title.

2. If a mortgage on lands is paid off by the purchaser of the equity of redemption, and canceled in fact and on the record by the purchaser, while under the misapprehension that his title is good, he cannot, upon discovery that his title is not good, have the canceling set aside and the mortgage declared in force, on the ground that had he then known of the defect in his title, he would have taken an assignment of the mortgage to protect his title. The mistake must be a mistake as to matter of fact, and not as to a question of law.

This cause was argued on final hearing, upon the bill and cross-bill.

*Mr. S. Tuttle,* for complainant.

*Mr. A. S. Pennington,* for defendant, Kumbel, cited—

*Chapman* v. *Hunt,* 1 *McCarter* 152 ; *Stokes* v. *Middleton,* 4 *Dutcher* 33 ; *Hutcheson* v. *Peshine,* 1 *C. E. Green* 167 ; 1 *Story's Eq. Jur.,* § 167 ; *Willard's Eq. Jur.* 64 ; *Norton* v. *Marden,* 15 *Me.* 56 ; *Haven* v. *Foster,* 9 *Pick.* 112 ; *Raynham* v. *Canton,* 3 *Pick.* 293 ; 1 *Story's Eq. Jur.,* § 165 ; *Simmons* v. *North,* 3 *Smedes & Marshall* 67 ; *Trenton Banking Co.* v. *Woodruff,* 1 *Green's C. R.* 125 ; *Lilly* v. *Quick, Ibid.* 97 ; *Miller* v. *Wack, Saxt.* 214 ; *Merselis* v. *Vreeland,* 4 *Halst. C. R.* 223 ; *Robinson* v. *Sampson,* 23 *Me.* 388 ; *Gouverneur* v. *Titus,* 6 *Paige* 347, 352.

*Mr. J. W. Taylor,* (with whom was *Mr. C. Parker,*) for the judgment creditors.

I. The judgments of Anable, Walker, Howard, and Hempstead, are admitted by the pleadings to be valid against John Whittemore, and to have been obtained upon *bona fide* debts, contracted and existing previous to May 28th, 1857, the date of the assignment.

1. The bill alleges their existence.

2. The answer in response, affirms their existence, validity, consideration, &c.

3. The complainant has not overcome the statements of the answer by any testimony. 2 *Greenl. Ev.* (6th ed.) § 284.

II. The pleadings also admit that previous to May 28th, 1857, the date of the assignment, the real estate in question was the property of Whittemore.

III. Therefore, unless the title to the premises has passed from Whittemore since May 28th, 1857, the judgments are valid liens thereon.

IV. There is no pretence of any transfer except by the deed of assignment; but that was void and inoperative, and effected no transfer for two reasons, viz. :

A. It contained preferences, and was therefore void by our statute. *Nix. Dig. "Assignments,"* § 1 ; *Varnum* v. *Camp,* 1

*Green's R.* 326; *Moore* v. *Bonnell,* 2 *Vroom* 90; *Hutcheson* v. *Peshine,* 1 *C. E. Green* 167; *McCullough's Heirs* v. *Rodrick,* 2 *Ohio* 380; *Rogers* v. *Allen,* 3 *Ohio* 48; *Burrill on Assignments,* (2d ed.) 360; *Story's Confl. of Laws,* (6th ed.) § 423–4.

To this position it may be objected that the assignment having been made in New York, where the parties thereto were domiciled at the time, "*in pursuance of the laws*" of that state, it should be enforced here as a matter of comity, especially as against the judgment creditors who are not residents of this state.

To which I answer :

1. It does not appear that it was made "in pursuance of the laws" of New York.

(1.) What are the laws of New York, is a pure matter of fact, to be legally pleaded and proved, like any other matter of fact.

(2.) There is no allegation or averment of it. The only allegation in reference to the matter is, that the assignment was made "in pursuance of the laws of the state of New York," without stating what those laws are. This is insufficient, and amounts to nothing.

2. That the assignment was made, and the parties to it resided, in New York, makes no difference, even though made pursuant to the laws of New York.

That was precisely the case in *Varnum* v. *Camp,* 1 *Green's R.* 326, and yet the court held the assignment void, even as to personal property in this state. See, also, *Moore* v. *Bonnell,* 2 *Vroom* 90.

3. Nor does it make any difference that the judgment creditors who contest the validity of the assignment, are citizens of other states.

(1.) They did not become parties to the assignment, acquiesce in it, or receive any benefit from it.

(2.) But whatever effect the *lex domicilii, lex loci contractus,* or the domicil of the contestants, may have upon the transfer of movables, it has none whatever upon the

transfer of immovable or real property, which must be transferred *lege loci rei sitæ. Burrill on Assignments* (2d ed.) 360; *Story's Confl. of Laws,* (6th ed.) § 424 *et seq.,* 428 *et seq.,* and cases there cited.

*B.* It contained a reservation of all "*his household furniture,*" contrary to law, even that of New York. *Burrill on Assignments,* (2d ed.) 256, and cases there cited; *Goodrich* v. *Downs,* 6 *Hill* 438.

1. If complainant should say that the law of New York exempted all household furniture, it is for him to allege and prove it.

2. But the law of New York, in fact, exempts (or then exempted) only a certain kind and amount of furniture.

V. The deed from Kumbel & Freeman to the complainant transferred only their right as assignees, not any right or title under the mortgage held by Kumbel.

1. It did not purport to convey any other right.

2. If there was any intention or attempt to convey by the deed, Kumbel's right as mortgagee, such right would have merged in the fee.

3. If Kumbel's interest as mortgagee was intended to be assigned, it would have been assigned in the ordinary mode, by assigning the mortgage as such.

4. Besides, there was no intention of transferring the mortgage; *the intention was to do precisely what was in fact done, viz., to cancel and annul the mortgage.*

5. If the note of Kumbel, as mortgagee, passed to Bentley, he is still himself only a mortgagee.

VI. The cancellation of the Kumbel and Morrell mortgages, and the expenditure of money in repairs and improvements by the complainant, give him no title to relief in this court.

1. These acts were done without the knowledge of the judgment creditors.

2. They were not done under a mistake or ignorance of fact, but (if under any mistake), under a mistake or ignorance of law simply, without any ingredient of "misrepresentation,

imposition, undue confidence, undue influence, mental imbecility, or that sort of surprise which equity uniformly regards as a just foundation for relief." 1 *Story's Eq. Jur.,* § 110, 113, 114, 115, 120, 137, 138, and cases there cited; *Willard's Eq. Jur.* 59; *Broom's Maxims (5th ed.)* 231. See *Champlin* v. *Layton,* 18 *Wend.* 407; *Garwood* v. *Eldridge's adm'rs,* 1 *Green's C. R.* 148.

VII. The defendant, Kumbel, has no ground for relief in this court.

1. His mortgage, as appears by his deposition, was given on the eve and in contemplation of the assignment, and if not wholly void for that reason, was a mere technical legal advantage or right, obtained at the expense of the other creditors; an advantage or right which this court will not restore when once lost.

2. He was bound to know the law of this state, where the real estate, with which he undertook to deal, was located, and where the contract was to be performed or consummated. *Merchants Bank* v. *Spalding,* 12 *Barb.* 302; *Ex'rs of Combioso* v. *Assignee of Moffet,* 2 *Wash. C. C. R.* 98.

3. Besides, as a part of the common law of New York, where he resided, he knew that the transfer of real estate here must be in accordance with our laws.

4. Moreover, even if it were a mistake of fact, with ordinary diligence, he would have ascertained the law of this state. The law of New York apprised him that the transfer must be according to our law; so he was put upon inquiry. 1 *Story's Eq. Jur.,* (6th ed.) § 146; *Deare* v. *Carr,* 2 *Green's C. R.* 513.

5. But after all, the mistake was made, not in canceling the mortgage, but in failing to apply the money to the payment of his debt, as he had a right to do.

THE CHANCELLOR.

The defendant, Whittemore, on the twenty-eighth day of May, 1857, conveyed and assigned to the defendants, Free-

man and Kumbel, all his property, real and personal, excepting his household furniture, in trust to sell and collect the same, and out of the proceeds to pay his debts in the order specified; certain debts amounting to $26,000, enumerated in schedule A, annexed to the deed, were directed to be first paid, and then all other debts ratably. This deed described a tract of land in New York, and the lot at Paterson, in this state, afterwards conveyed to Bentley; all the other property was conveyed by general terms. Whittemore, Freeman, and Kumbel, all resided in New York, where the assignment was made and executed. Two years before the assignment, Whittemore had given a mortgage on the Paterson lot to Mary Morrell, for $2000, and twenty days before the assignment he had given another mortgage on the same lot to the defendant, Kumbel, for $8000. Both these mortgages were duly registered, and were subsisting encumbrances at the date of the assignment. The deed of assignment was recorded in the office of the clerk of the county of Passaic.

On the twelfth day of May, 1858, Freeman and Kumbel sold and conveyed the lot and mill in Paterson to the complainant, by deed dated on that day, in which they are styled assignees of Whittemore. This sale was for the consideration of $8000, which was expressed in the deed, and was paid by assuming the Morrell mortgage and $6000 in cash. The mortgage to Kumbel was at this sale given up and canceled in fact, and was canceled on the record of registry two days afterwards, when the deed was recorded. Bentley afterwards paid the Morrell mortgage, and had it canceled of record on the twenty-seventh day of May, 1863, and destroyed the mortgage. Bentley repaired and fitted up the mill at large expense, and carried on his business in it.

The defendants, Hempstead, Anable, Howard, and Walker, were creditors of Whittemore. At different times, from the eighth day of June, 1863, to the thirtieth day of September, in the same year, each recovered a judgment against him in the Supreme Court of this state, and caused an execution to be issued and levied upon the mill and lot sold to Bentley,

and caused it to be advertised for sale ; they contending that the assignment by Whittemore was void by the law of New Jersey, on account of preference to some creditors, and that the title still remained in Whittemore. The bill is filed for an injunction to restrain the sale, and to have the mortgages, alleged to be canceled by mistake, again set up and declared valid liens, to protect the complainant's title.

Kumbel filed a cross-bill, to have the mortgage to him set up as having been canceled by mistake, or rather under misapprehension, as he supposed that the assignment was valid, and that the deed to the complainant conveyed the title,

The defendants, Hempstead and Anable, reside in New York, Walker in Rhode Island, and Howard in New Hampshire ; and did so reside at the date of the assignment.

The first question is, whether the assignment of Whittemore is void. The construction of the assignment act on this point, was settled by the Supreme Court in *Varnum* v. *Camp*, 1 *Green's R.* 326. The court there held that the directions of the first section of the act, that all assignments in trust for the payment of creditors should be for their equal benefit, in proportion to their demands, made that *pro rata* equality essential to the validity of the assignments, and that assignments made contrary to this requirement were void. This part of the act was held to be imperative, although in the same section it was declared that the preference should be void. And this decision has been acquiesced in by the courts and the bar, as the correct construction of that act. In *Goodrich* v. *Downs*, 6 *Hill* 438, the Supreme Court of New York gave the same effect to a similar provision. And the fact that at the Revision of 1846, after that construction had been given and accepted for years, this statute was re-enacted in the same words, with the approval of the eminent jurists to whom that Revision was entrusted, would almost make that construction a part of the law, and put it beyond the power of the courts to reconsider it.

The only doubt thrown over that decision was by the ruling of the Supreme Court in *Moore* v. *Bonnell*, 2 *Vroom*

90. In that case, the court held that as personal property is held to follow the domicile of the owner, and transfers of it made at the place of his domicile must be governed by the law of that domicile, therefore, a preferential assignment of personal property situate in New Jersey, made in New York, by an inhabitant of that state, and valid by its laws, was valid to pass the title to that property as against a creditor living in New York, though as to a creditor residing in New Jersey, it would have been void. The rule that personal property shall be transferred according to the law of the domicile of the owner, and not the law of *rei sitæ*, does not apply when the rights of residents in the state where the property is situate, will be affected by it. This ruling does not affect the decision in *Varnum* v. *Camp*, as to the construction of the statute; nor does it contravene the application of it in that case, if, as is generally understood, the plaintiff in the execution was a resident of this state. In fact, this construction of the statute is reaffirmed by the opinion in *Moore* v. *Bonnell;* and it is shown that it did not apply to assignments of personal property, when both the debtor and creditor were residents of the same foreign state, by the law of which it was valid.

But the distinction made in *Moore* v. *Bonnell*, has nothing to do with the case before us. That was founded on the rule as to personal property. As regards real property, the rule is different. It is well settled in England, and the states where the common law is in force, that the transfer and descent of real property is governed by the law of the state in which it lies. This rule is without exception, and I am not aware of any case, or any authority, in which it is questioned. *Story's Confl. of Laws,* § 424, 428, *and* 435; *Burrill on Assignments, ch. XXX, p.* 371; *Brodie* v. *Barry,* 2 *Ves. & B.* 130; *Birtwhistle* v. *Vardill,* 5 *Barn. & C.* 438; *S. C., in error,* 9 *Bligh* 32; 6 *Bing.* (*N. C.*) 385; *Elliott* v. *Lord Minto,* 6 *Madd.* 16; *Curtis* v. *Hutton,* 14 *Ves.* 537; *United States* v. *Crosby,* 7 *Cranch* 115; *Clark* v. *Graham,* 6 *Wheat.* 577; *Kerr* v. *Moon,* 9 *Wheat.* 565; *Hosford* v.

*Nichols,* 1 *Paige* 220; *Chapman* v. *Robertson,* 6 *Paige* 627; *Cutler* v. *Davenport,* 1 *Pick.* 81.

The assignment to Freeman and Kumbel is void as to the lands in this state; it conveyed no title to them, and of course they could convey none to the plaintiff.

The complainant contends, that if the assignment is void, yet he is entitled to have the cancellation of the mortgages set aside, as done by mistake and misapprehension, and, as they were paid by him, that he shall be decreed to be the equitable assignee, and to have priority to that extent, to the defendants. This claim is founded on justice, and ought to be sustained, if it can be, without violating established principles of equity. These two mortgages, when paid and canceled, were valid, subsisting liens on Whittemore's property—valid against him and his creditors; they were paid by the complainant, with the belief that the payment would enure to his benefit.

Courts of equity have power to correct mistakes, and protect from the consequences of them. It is one of the well established heads of equity jurisdiction, and this court has frequently exercised this power in the case of mortgages canceled by mistake. But it is only mistakes as to fact that entitle to this relief. It is well settled, that this court will not relieve for a mistake as to the law. Few transactions would be safe if they could be set aside for a misapprehension of the legal rights of the parties to them. The doctrine is too well settled by authority, and too well supported by the reason on which it is founded, to be disregarded. This principle was considered, affirmed, and applied to the canceling of a mortgage, in the case of *Garwood* v. *Eldridge's adm'rs,* 1 *Green's C. R.* 145. The same doctrine is recognized in *Lyon* v. *Richmond,* 2 *Johns. C. R.* 60, and *Storrs* v. *Barker,* 6 *Johns. C. R.* 170; and is discussed at large by Justice Story, in 1 *Eq. Jur.,* § 121 to 138, who, after an elaborate review of the authorities, arrives at the conclusion, that a court of equity will not relieve a party from the effect of

his mistake of the law, unless when accompanied by fraud or imposition of the other party.

Although a mistake as to the law of a foreign state is considered a mistake of fact in most cases, yet when a non-resident enters into a contract, to be performed in another state, or relating to lands in a foreign state, he is held to know the law of such state, and in that case, the mistake is one of law. Besides, Bentley, who seeks the relief, and paid the mortgages and canceled them by mistake, was a resident of this state.

The bill and cross-bill must be dismissed.*

3. If a purchaser at sheriff's sale agree to re-convey the property, upon being repaid the purchase money and other advances to be made by him, the amount of which is unknown to the party to whom the re-conveyance is to be made, and upon demand made at the time fixed for re-conveyance, fails to render a proper statement of such advances, the time for re-conveyance will be extended, although made expressly part of the essence of the contract. The party to make payment is not in fault until a proper account is rendered, if demanded.

---

* The assignment was held valid on appeal; decree reversed accordingly, 4 *C. E. Gr.* 462.