## HUNGERFORD'S BANK *vs.* DODGE and others.

Accommodation indorsers of a promissory note made by a corporation are not estopped by the " Act to prohibit corporations from interposing the defense of usury in any action," passed April 6, 1850, from alleging usury, as a defense to an action brought against them and the corporation jointly, upon the note. PRATT, J. dissented.

Such indorsers are in no sense strangers to the contract of loan, so as to preclude them from setting up the defense of usury when sued upon their indorsement, or from seeking affirmative relief by action, on the ground of usury.

They are sureties of the borrower, and as such are embraced in the term " borrower," as used in the 8th section of the revised statutes relating to usury, and in the 4th section of the usury law of 1837.

THE plaintiff sued the Potsdam and Watertown Rail Road Company as maker, and the other defendants as indorsers of a promissory note, negotiated with the plaintiff and discounted by it for the benefit of the maker. The cause was tried at the Jefferson circuit, before MASON, J. without a jury, and it was proved that the indorsers were accommodation indorsers for the rail road company, and that the loan and discount to the company, upon and for which the note was given, was usurious. The rail road company suffered default, and the judge at circuit gave judgment against the other defendants, for the amount due upon the note for principal and interest, and from that judgment the defendants appealed.

*J F. Starbuck,* for the appellants.

*C. Andrews,* for the respondents.

Hungerford's Bank *v.* Dodge.

W. F. ALLEN, J.   The plaintiff loaned to the Potsdam and Watertown Rail Road Company money at a greater rate of· interest than that allowed by law, and to secure the repayment of the money so loaned, with the illegal interest, the note in suit was given—the individual defendants indorsing as the sureties and for the accommodation of the rail road company, the maker of the note.   Judgment at the circuit was given against the indorsers, upon the ground that they were estopped by the " Act to prohibit corporations from interposing the defense of usury in any action," passed April 6, 1850, from alleging usury, as a defense to this action.

The defendants are in no sense strangers to the contract of loan, so as to preclude them from setting up the defense of usury when sued upon their indorsement, or from seeking affirmative relief by action, on the ground of usury.   They are sureties of the borrower, and as such are embraced in the term " borrower," as used in the 8th section of the revised statutes relating to usury, and in the 4th section of the usury law of 1837.   (3 *R. S.* 73, § 8, *and* 74, § 13, *5th ed.   Post* v. *Bank of Utica,* 7 *Hill,* 391.   *Cole* v. *Savage,* 10 *Paige,* 583.   *Morse* v. *Hovey,* 9 *id.* 197.)   A mere stranger to the transaction cannot, ordinarily, allege usury in respect to it, but a party to a deed or contract, as well as those standing in legal privity with him, can, unless estopped or under disability of some kind, always show it to be void when it is sought ·to be enforced against him.   The defendants are not, certainly, strangers to their own contract of indorsement.   They and they only can allege the invalidity of their contract.   (*Dix·* v. *Van Wyck,* 2 *Hill,* 522.   *Green* v. *Morse,* 4 *Barb.* 332.)   They are not necessarily restricted, by their relation to the principal, to the defenses which may be made available to the maker of the note.   They are not joint contractors with the maker, and the contracts of the maker and indorsers are entirely distinct, and governed by different rules.   The contract of the one is conditional, while that of the other is absolute. An action against an indorser may be defeated by want of de-

mand and notice, by dealing with the principal debtor to his prejudice, when he occupies the position of a surety ; and an indorsement may be void as obtained by fraud, or for some other reason, while the contract of the maker is valid.  So too one party to a note, maker or indorser, may be estopped by his own acts from setting up a defense true in fact and common to both, and which would be fatal, while the other parties may avail themselves of it.  (*McKnight* v. *Wheeler*, 6 *Hill*, 492.  *Holmes* v. *Williams*, 10 *Paige*, 326.  3 *Kern.* 316, *per Denio, J.  Chamberlain* v. *Townsend*, 26 *Barb.* 611.  *Dowe* v. *Schutt*, 2 *Denio*, 621.  *Clark* v. *Sisson*, 4 *id.* 408.  *Prescott* v. *Davis*, 4 *Barb.* 495.)  As one party may be estopped by his own acts from setting up a defense, so he may be estopped by act and operation of law, or by a statute describing him by name, or by his status or condition, or as a contractor in a particular form, without affecting the parties not named. The contracts of makers and indorsers of promissory notes are treated as they are in truth, separate and several contracts. They may or may not be supported by the same consideration, but a joint action will not lie against them although they may now, by statute, be sued together; but in such case the action is regarded, for all the purposes of protecting the rights of parties, and is prosecuted, as a several action against the several parties.

The validity of the contract of indorsement does not necessarily depend upon the validity of the engagement of the maker.  It is true where both grow out of the same transaction, and depend upon the same consideration, if one is illegal both are necessarily so ; but it does not follow, that because one is not in a situation to allege the illegality, the other shall be precluded.  The law which forbids the borrower in this case to allege usury, is very direct in its terms and simple in its provisions.  "No corporation shall hereafter interpose the defense of usury."  Assignees and representatives of corporations, although not named, are within the spirit of the act, and therefore within its terms, and they are not permitted to avail themselves of a defense from which the corporation is

Hungerford's Bank *v.* Dodge.

excluded. (*Curtis* v. *Leavitt*, 15 *N. Y. Rep.* 296, *pl.* 8.) Whether, under all circumstances, creditors and others claiming under a corporation would be within the prohibition, is not settled, and is not free from doubt, but need not be considered here. So, too, although the letter of the act merely forbids corporations from interposing the *defense* of usury, it has been very properly held, that it necessarily takes from the corporation the right to assert the usury in any way defensively, and in a way to vacate or set aside a contract as well by affirmative action as by way of a defense to an action on the contract. It takes from the corporation the *objection* of usury. (*Butterworth* v. *O'Brien*, 28 *Barb.* 187.) This being so, the language used by the learned judge of the court of appeals, in *Curtis* v. *Leavitt*, was appropriate and expressive. The undertaking of a corporation, formed upon a usurious consideration, is *quoad* the corporation and its receiver or assignee, as if no statute of usury existed. A statute is as no statute to one who is prohibited to use or claim the benefit of it. It is as a repealed statute to him. His rights are not affected by it. Judge Comstock says, at page 85, " My impression is that the act must be construed as a repeal of the statute of usury, as to all contracts of corporations stipulating to pay interest," &c. This is doubtless true; but that does not extend necessarily to collateral contracts of others. Here we have the agreement for a loan usurious in itself, consummated by the loan, and the absolute promise or contract of the corporation to pay, as to which it is said and need not be decided, the statute of usury is repealed, and the collateral and conditional contract of the sureties, as to whom the statute of usury is in full force. Judge Brown, at page 154, better expresses my idea of the effect and operation of the statute, and refers to it as operating upon the condition of the artificial beings named, and thus, as to them, incidentally affecting the contract. He says, " The condition of this class of beings becomes the same as if the usury laws never existed." The statute operates directly upon the person, and only indirectly

and incidentally upon the contract. Interpretation has no place in respect to a statute or other instrument which is perfectly plain and easy to be understood, giving the words their ordinary and usual signification. The statute was passed under the pressure of the case of the *Dry Dock Bank* v. *The American Life Insurance and Trust Company*, in which the plaintiff was exonerated from the payment of a very large sum of money loaned under a contract held to be usurious, (3 *Comst.* 344,) and was not designed especially to give needy corporations the advantage over needy individuals competing for loans in the money market. It may have had that effect, but such was not its primary object, which was to hold corporations to their engagements, irrespective of the general policy of the usury laws as affecting the contracts of individuals. The language chosen is well calculated to carry out the primary object of the act, and is not so general as to interfere with the usury laws, or to affect individuals. If the statute of 1850 by implication repeals the usury laws, so far as contracts for loans to corporations are concerned, as is claimed, then a repeal of that act would not so restore the usury laws as to invalidate contracts made during its existence, by bringing them within the penalty imposed by the usury laws. A repeal of the act could not affect the contract; and yet my impression is, that a repeal of that act would place all contracts of corporations on the same footing with contracts made by individuals. The statute would preclude a corporation surety from interposing the defense of usury, although the individual and principal debtor not within the act would not be estopped. It certainly cannot be claimed that all parties to a promissory note or bill of exchange, in which the name of a corporation is found as maker, drawer, indorser or acceptor, are by the act of 1850 debarred from the prohibition of the statutes of usury. It is supposed that there is some mysterious connection between the contracts of the maker and indorsers by means of the loan which constitutes the consideration of both, by which the disabilities of the maker are transferred to the

Hungerford's Bank *v.* Dodge.

indorsers. But I am unable to see by what process. If the legislature had said, as they might, that the statutes of usury should not apply to contracts for the loan or forbearance of money to corporations, the case would be different, and the plaintiff's counsel would be right; but it is not so written, and we are not permitted to go beyond the statute. If such had been the substance of the act, then it would not have affected the liability of corporations upon contracts made in other states, and void by the usury laws of those states. Our statutes could not repeal foreign statutes, and they could have been pleaded in our courts. But the statute does in truth, as intimated by Judge Comstock in *Curtis* v. *Leavitt*, prohibit corporations from interposing in our courts the usury laws of other states and countries as a defense to their contracts, which shows that the statute operates not by way of a repeal of our statutes of usury, but simply upon the person; that the prohibition is personal. I do not suppose that it would make any difference if the action was against the defendants as joint borrowers with the rail road corporation, and upon a joint contract. But it is not so, and the contracts are as independent as if written on separate pieces of paper. Suppose the defendants had loaned their note to the rail road company, payable to bearer, and the company without indorsement had sold it for less than its face, so that it would have been void for usury, would the fact that the loan was made to a corporation bring the parties to the note within the provisions of the act of 1850, and exclude them from the benefit of the usury laws? Certainly not, as I think; and if not, then the fact that the corporation indorsed the note would not affect the makers. And to go one step farther: the fact that the corporation borrowed the indorsement rather than the note of the individuals, would not vary the rights of the parties. By statute, (3 *R. S.* 73, § 5, *5th ed.*) "All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever, &c., whereupon or whereby there shall be reserved or taken a greater sum or value for the loan or forbearance of any money,

&c. than is prescribed by statute, shall be void." An indorse-
ment by way of security is within the provision. The note ·
and indorsement received vitality by the transfer to secure the
loan, and depend upon it as a consideration ; and if that is ille-
gal, the contract fails. It is no answer to the plea of usury,
when interposed by the indorser, to say that the maker is es-
topped, or by law precluded from alleging the defense. When
the maker interposes the defense, the estoppel may be replied.
It is as to the contract of the corporation that the statute of ·
usury is *quasi* repealed, not as to the contract of the individ-
ual indorsers. It is only by a construction not warranted by
the language of the act, nor required by any necessity, nor
necessary to give full effect to the statute and the intent of
the legislature as expressed in it, that it can be claimed that
the loan to a corporation, and all securities connected with it,
are made valid by being taken out of the operation of the
statutes of usury by the act of 1850, and I am not prepared
to go that length. We are referred to two cases, (*Book* v.
*Lanman,* 24 *Penn. Rep.* 435, and *The Market Bank of Troy* v.
*Smith,* decided by the United States district court for Wiscon-
sin, and reported in the *Am. Law Reg.* for September, 1859,)
in which the same construction was given to the statute, and
with the reasoning I am entirely satisfied. Perhaps a shorter
answer to the defense interposed in those states would have
been, that the laws of this state affecting the remedy had no
extra territorial force, and such would have been consistent
with the view taken of the statute. I think the learned jus-
tice erred in his application of the statute, at the circuit, and
that the judgment must be reversed and a new trial granted ;
costs to abide the event.

BACON, J. concurred.

PRATT, J. dissented.

New trial granted.

[ONONDAGA GENERAL TERM, January 3, 1860. *Pratt, Bacon* and *W. F.
Allen,* Justices.]