### SMITH vs. ALVORD.

Although another State cannot create a corporation within this State, yet it is no objection to the corporate acts of a foreign corporation done in this State that they are authorized by a meeting of the directors, held in this State, when the acts so authorized are not repugnant to the policy of our own laws.

Where the defense of usury is unavailable to a corporation, it is also unavailable to one who has guarantied the payment of its bonds. MULLIN, J., dissented.

Corporations being prohibited, by statute, from interposing the defense of usury, in any action, one who has guarantied the payment of bonds issued, in this State, by a foreign corporation, for the payment of loans, in pursuance of a resolution of the directors, at a meeting held in this State, which bonds bear an interest of ten per cent, and are valid by the laws of the State where the corporation is located, cannot set up the defense of usury, when sued upon a bond, as guarantor.

APPEAL, by the defendant, from a judgment entered upon the report of a referee. The report was in favor of the plaintiff for $168.78. Judgment January 31, 1865, for $240.57, damages and costs.

The complaint alleges, in substance, that by the laws of the State of Illinois the Rock Island Coal and Coke Company was authorized to borrow money upon the bonds of the company, to an amount not exceeding $100,000, and to pay interest thereon at the rate of ten per cent. That on the 15th day of March, 1859, the company issued six of its bonds, for $200 each, payable to Edward B. Judson, or bearer, at the Merchants' Bank in Syracuse, with interest at the rate of ten per cent per annum, payable at said bank semi-annually, on the first days of April and October, on presentation of the interest warrants and coupons attached to said bonds. That said bonds were delivered to one Coddington B. Williams, for value received, and that Thomas G. Alvord, the defendant, at the time of the issuing and delivery of the bonds in question, for value received, guarantied the payment of the same,

with the interest thereon, according to their tenor and effect.

The plaintiff having purchased these bonds, and the interest not being paid on presentation of the coupons at the Merchants' Bank in Syracuse, brought this action to recover the back interest, amounting to $150.

The answer of the defendant, after denying the allegations of the complaint generally, states that the Rock Island Coal and Coke Company was located at Syracuse, where its officers resided and did their business, where it issued its bonds, although incorporated by the legislature of the State of Illinois; and that said bonds are void for usury.

The referee found, as matter of fact, that the Rock Island Coal and Coke Company was incorporated by the Illinois legislature, in 1857, for the purpose of mining, loading, transporting and selling mineral coal and other products taken from lands in Illinois, and was empowered to take and hold certain lands for that purpose, and to hold meetings within or without the State of Illinois. That on the 11th day of March, 1859, the board of directors held a meeting at Syracuse, N. Y., and passed a resolution authorizing the issuing of the bonds in question. That the board of directors consisted of five persons, three of whom resided in Syracuse, and that Edward B. Judson, the trustee to whom said bonds were made payable, resided there also. That said bonds were secured by a mortgage on the real estate of the company in Illinois, payable to said Judson as trustee. That Coddington B. Williams, above named, was one of the directors, and that said bonds were negotiated and delivered to him. That at a prior meeting of the stockholders, in Syracuse, the defendant was present and assented to the issuing of bonds, and stated that he would guaranty $3000 of said bonds, the same being his pro rata share; and that C. B. Williams agreed to take the bonds, and afterwards applied

to the defendant for his guaranty; and that the defendant gave it, as he had agreed to do.

It was further found by the referee, that the corporation borrowed of C. B. Williams $3000, when the bonds in question were issued, and that said bonds, to that amount, were delivered to him to secure the payment of said sum, at ten per cent; and that the defendant agreed, at the time, to guaranty the payment of said loan, with interest at that rate. And that all these things were done under and with reference to the laws of the State of Illinois. To which finding the defendant excepted.

The referee found, as a conclusion of law, that inasmuch as the corporation could not set up the plea of usury by the laws of this State, the defendant, as guarantor, could not set it up.

He also found that the contract was to be governed by the laws of the State of Illinois, having taken place with reference to those laws. There were exceptions to these conclusions of law, and the question was upon these exceptions.

*Charles Andrews,* for the appellant.

I. The guarantor of a usurious contract can interpose the defense of usury. (2 *Parsons on Cont.* 368. *Hungerford's Bank* v. *Dodge,* 30 *Barb.* 626. *Parshall* v. *Lamoreaux,* 37 *id.* 189.)

II. The defendant is not prevented from interposing the defense in this action, although the corporation which issued the bonds could not interpose it. The act of April 6, 1850, declaring that "no corporation shall thereafter interpose the defense of usury in an action," deprives the corporation of this defense, but leaves the other parties to a contract of a corporation free to interpose it. (*Hungerford's Bank* v. *Dodge,* 30 *Barb.* 626. *Curtis* v. *Leavitt,* 15 *N. Y.* 10.)

III. The bonds in question were executed and nego-

·tiated within this State, and were, by their terms, payable here. They were New York contracts, and their validity is to be determined by the laws of this State. 1st. The validity of a personal contract is to be determined by the law of the place where it was made, unless it is, by its terms, to be performed at a different place, in which case the law of the place of performance determines it. (_Thompson_ v. _Ketcham_, 8 _John._ 190. _Jewell_ v. _Wright_, 27 _How._ 481. _Story on Conflict of Laws_, § 291.) The rule in some of the States allows interest to be stipulated according to the law of either State, when the contract is made in one State but is to be performed in another. (_Depeau_ v. _Humphreys_, 20 _Mart._ 1. _Pars. on Cont._ 96.) If, however, a contract is expressly payable, or to be otherwise performed there where it is made, then it is the only place by which its validity is to be determined. (_Pars. on Cont._ 95.) 2d. In determining the validity of a contract in respect to usury, it is not a material circumstance that its performance is secured by a mortgage or other security, upon property situated in another country, where a different rate of interest prevails. (_Story on Conflict of Laws_, I. 293.. _De Wolf_ v. _Johnson_, 10 _Wheat._ 367.) The case of _Chapman_ v. _Robertson_, (6 _Paige_, 627,) does not conflict with this doctrine, and that case has been questioned and substantially overruled. (_Curtis_ v. _Leavitt_, 15 _N. Y._ 88. _Story on Conflict of Laws_, I. 293, _note._)

IV. The bonds (as to this defendant) were usurious, and the guaranty was void. 1st. They were issued upon a loan of money by Williams to the corporation. 2d. They were executed in this State, and were negotiated there to a citizen of this State. 3d. By their terms, the bonds and coupons were payable here. 4th. The defendant was an accommodation guarantor for the corporation. 5th. The plaintiff took the bonds with notice (upon their face) of their invalidity.

V. The point upon which the referee decided the case,

to wit, that the bonds were made with reference to the law of Illinois, and were not, therefore, usurious, is unfounded in fact and in law. 1st. The terms of the contract are decisive, that the contract was made with reference to the law of New York. Kent, J., in *Thompson* v. *Ketcham*, (8 *John.* 192,) says: "The force and effect of a contract must be determined from the contract itself, and not by proof, *aliunde*. The *lex loci* is to govern, unless the parties had in view a different place, by the terms of the contract." 2d. The parties may have supposed that the bond would be valid by force of the statute of Illinois; but this mistake of law did not make them Illinois contracts.

*James Noxon*, for the respondent.

I. The law of usury is not applicable to contracts made by corporations; as to corporations there is no usury law, and their contracts are valid. (*Laws of* 1850, *p.* 334.) 2. The effect of the statute is wholly to repeal the usury laws as to corporations, and to render their contracts legal and valid, irrespective of the interest they agree to pay. (*Curtis* v. *Leavitt*, 15 *N. Y.* 85, 151, 174, 229, 255. *Butterworth* v. *O'Brien*, 23 *id.* 275. *S. C.*, 28 *Barb.* 187.) 3. The statute applies to foreign corporations. (*Southern Life Ins. Co.* v. *Packer*, 17 *N. Y.* 51.) 4. The principal contract being free from usury, and in all respects lawful, the undertaking of the guarantor is necessarily valid also. 5. In this case the guarantor was a stockholder, and a party to the issuing of the bonds, and comes clearly within the prohibition of the statute against setting up usury. 6. The case of *Hungerford Bank* v. *Dodge*, (30 *Barb.* 626,) overruling the decision of Justice Mason at special term, (19 *How.* 40,) it will be claimed, disposes of this question, in this district. We insist that the reasoning of the court in the cases cited, reported in 15 New York and 23 id., is at variance with the decision in 30 Barbour, and that the

opinion of Justice Mason is sustained by the authorities cited, and should be regarded as the law of the land.

II. The bonds in question are to be regarded as made in Illinois, under a law of that State, and with reference to the law, and issued under and in pursuance of its provisions. Whenever or wherever the company acts, it does so under its charter. It can make no difference where the directors meet and transact the business of the company; it is the act of the corporation, whether it speaks through its directors in or out of the State. The charter so expressly allowed it to speak, and the law of Illinois governs, in the same manner as if the meeting had taken place in that State. The business of the corporation was there; its coal lands and property, its objects and operations were carried on in that State, and its acts are to be governed by the laws of that State. In *Fanning* v. *Consequa*, (17 *John.* 511,) the rule is laid down, that interest is payable according to the laws of the country where the contract is made; but if, by the terms of the contract, it appears it is to be executed in another country, or that the parties had reference to the laws of another country, then the place in which it is made is, in this respect, immaterial, and it is to be governed by the laws of the country in which it is to be performed. In *Thompson* v. *Ketcham*, (8 *John.* 193,) Kent, Ch. J., says: "The *lex loci* is to govern when the parties had in view a different place, by the terms of the contract. Lord Mansfield, in *Robinson* v. *Bland*, (2 *Burrow*, 1078,) says the law of the place can never be the rule where the transaction is entered into with an express view to the law of another country." In *Le Breton* v. *Miles*, (8 *Paige*, 261,) two natives of France entered into an ante-nuptial contract in New York, relative to their future interests in the property which they had at the time of marriage, and in reference to the laws of France. It was held that the rights of the parties under the contract, must be governed by the law of France. In

Smith *v.* Alvord.

*St John* v. *The Am. Mu. Life Ins. Co.,* (2 *Duer,* 419,) it was held that the construction and effect of an insurance policy made by a corporation of another State, although the contract was made in this State, was to be governed by the law of the foreign State. See also same case on appeal to the Court of Appeals, 3 *Kern.* 31. In *Pomeroy* v. *Ainsworth,* (22 *Barb.* 128,) the rule is laid down, that the law of the place where the contract is made governs, unless it is made with reference to the laws of another State. To the same effect, see *Sherrill* v. *Hopkins,* (1 *Cowen,* 108 ;) *Chapman* v. *Robertson,* (6 *Paige,* 630.) In *Cutler* v. *Wright,* (22 *N. Y.* 474,) it was held that a note made and executed in this State, but dated and made payable in Florida, was to be regarded as a Florida contract, and the court say, "In *Curtis* v. *Leavitt,* (15 *N. Y.* 85,) it is said the authorities do not leave this question in doubt." Regarding the bonds as issued under and in reference to the laws of Illinois, they are legal and valid, and the guaranty of such bonds will not be tainted with usury.

III. If the bonds are regarded as made in Illinois, the question arises, what law governs, as to interest. The bonds are payable in another State. Hence the place of making and the place of performance are in different States. The general rule, in the construction of contracts, is that the place of performance governs. To this rule there are exceptions, and the law is now settled in this State as to interest, that the parties may, by their contract, stipulate or agree upon the rate of interest as it exists in the place where the contract is made, or where it is to be performed, and the law will enforce the interest agreed upon. As to interest, we claim the rule to be that, if a contract is made in one State to be performed in another, and the interest is not specified, the law of the place of performance or payment governs. This is the doctrine of the case of *Jewell* v. *Wright.* It decides just so much, and no more. The counsel for the appellant in

that case, reviewed all the authorities, and at the close of his points says: "The law is so well settled that it is unnecessary to cite authorities, that when a contract is made in one State to be performed in another, the parties may stipulate the highest rate of interest in either." The precise question was decided in the case of *Depeau* v. *Humphreys*, (20 *Martin*, 1,) and Justice *Story*, in his *Conflict of Laws*, discusses the same question, and disapproves of the decision. *Parsons*, in his *Law of Contracts*, (2 *vol. p.* 96,) reviews the opinion of Judge Story, and reaches a different conclusion, from the same authorities. The authority in 1 *Martin* was approved in *Chapman* v. *Robertson*, (6 *Paige*, 627;) *Peck* v. *Mayo*, (14 *Verm.* 33;) *Hosford* v. *Nichols*, (1 *Paige*, 220;) *Pratt* v. *Adams*, (7 *id.* 616;) *Curtis* v. *Leavitt*, (15 *N. Y.* 227;) *Balme* v. *Wombough*, (38 *Barb.* 363.) In 2 *Parsons*, 95, the rule is laid down, that if a note is made in one place expressly bearing an interest legal there, and payable in another place in which so high a rate of interest is not allowed, it may be sued where payable, and the interest expressed, recovered. At page 391, *Parsons* says, if a foreign contract provides for interest which is lawful where the contract is made, it will not be declared void for usury in a State in which only a lower interest is allowed by law. In 2 *Kent*, 460, (10 *ed.* 622,) the same rule is laid down, and at the close of the note, on page 623, it is said, the principle now established in Louisiana and New York is, that the place where the contract is made determines its validity as to interest, though made payable in another State, where the rate of interest is lower.

IV. The defendant is sued as a guarantor of the bonds of the coal company, and cannot interpose the defense of usury. (*Mann* v. *Eckford*, 15 *Wend.* 502. *Draper* v. *Trescott*, 29 *Barb.* 408. *Vilas &c.* v. *Jones*, 1 *N. Y.* 274.)

V. The defendant, in this case, stands in the same situation as though he had taken the bonds, and under the

Smith *v.* Alvord.

evidence he should be regarded as a lender. The act of becoming guarantor was only another method adopted by him to place so much money in the hands of the company, because he then had not the means to advance upon the bonds allotted to him

MORGAN, J. I had doubts, at first, whether the corporation could exercise its functions within the limits of this State. In *Merrick* v. *Brainard and others,* decided by this court in January, 1860, (38 *Barb.* 574,) it was held that a corporation created by the laws of Connecticut could not make a valid contract in this State, when it appeared, from the evidence, that, except in the formal election of its officers, its principal business was transacted in this State. (*Reversed on appeal,* 34 *N. Y.* 208.) I did not concur in that decision; nor do I think it necessarily controls the case at bar; for the evidence here shows that the business of the Rock Island Coal and Coke Company is transacted in Illinois, except that the meetings of its directors are sometimes held in this State. It is undoubtedly true that the State of Illinois cannot create a corporation within this State, but it is no objection to the corporate acts of a foreign corporation in this State, that they are authorized by a meeting of directors held in this State, when the acts authorized by the directors are not repugnant to the policy of our own laws. (*Angell & Ames on Corp.* 250, *et seq. McCall* v. *Byram Manuf. Co.,* 6 *Conn.* 428.)

Assuming that the Rock Island Coal and Coke Company duly authorized the issuing of the bonds in question, by a resolution of the directors at a meeting held at the city of Syracuse in this State, and that they are valid by the laws of Illinois, where the company is located, the first question is, whether the defendant, who guarantied their payment, is in a position to defend upon the ground of usury.

It is claimed that this question has already been dis-

posed of, so far as this court is concerned, against the views of the plaintiff.

By the laws of this State, (*Sess. Laws of* 1850, *p.* 334,) a corporation cannot plead usury to avoid its contracts; and this applies to *foreign* as well as domestic corporations. (*Southern Life Ins. Co.* v. *Packer,* 17 *N. Y.* 51.) It was decided in this court, in the case of *The Hungerford Bank* v. *Dodge,* (30 *Barb.* 626,) that indorsers of a promissory note made by a corporation were not within the act, and might interpose the defense of usury, though the principal could not. That decision was made by a divided court, but the case was well considered by the learned justice who delivered the prevailing opinion, and is entitled to our respect as authority, until it is overruled by a higher tribunal. The reasoning in the cases of *Curtis* v. *Leavitt,* (15 *N. Y.* 9,) and *Butterworth* v. *O'Brien,* (23 *id.* 275,) seems to conflict somewhat with the authority of *Hungerford Bank* v. *Dodge;* but the case itself has twice been decided in this court, and I am inclined to follow it, unless the judge who concurred in the decision is of opinion that the principles upon which it was decided are overruled by the Court of Appeals. It may be difficult to reconcile it with the reasoning of the judges in the cases above referred to in the Court of Appeals; but it is apparent, I think, that a statute which estops a corporation from pleading usury, is not necessarily to be construed so as to include those who indorse its paper or guaranty the payment of its loans. It is a question of construction, and this court having adopted a certain rule in reference to the statute of 1850, I am not inclined to depart from it, until a higher court shall have decided the other way, or the judge who concurred in it, shall express a desire to reconsider the question.

The next and principal question is whether the contract is usurious. Let us state the case briefly before citing the authorities. The Rock Island Coal and Coke Company is an artificial being, having its residence in the State

Smith *v.* Alvord.

of Illinois. It is authorized by the legislature of that State to borrow money at ten per cent. It came to Syracuse, N. Y., and made its obligations, agreeing to pay ten per cent for money. The contract or loan was made in Syracuse. The money was borrowed, and the repayment of the loan and interest was to be made in Syracuse. This does not differ from the case of an individual authorized by the laws of the State of Illinois to borrow money at ten per cent, to be used in some enterprise in the latter State. He may borrow the money in this State, or he may negotiate his obligations in England or Holland. If the payment is to be enforced in the State where the person resides, and when the loan is authorized, there can be no difficulty in the case. The difficulty grows out of the fact that the contract is made in a State where the loan of money at a greater rate of interest than seven per cent is prohibited, and where the contract of the guarantor is to be enforced. The laws of Illinois have no binding force in this State, and this court does not sit to administer these laws, but our own.

It is said that the contract was made in Illinois. This position is not sound. The corporation, so to speak, came into this State and made the contract here, and agreed to repay the borrowed money here.

It is therefore as much a New York contract as though an individual of another State came here and borrowed money of one of our citizens, agreeing to repay the same at some of our banking institutions in this State. It is said that all contracts which are to be construed within the State in which they are made, must be construed according to the laws of that State. (2 *Pars.* 82.) And the same thing is true in general, when contracts are construed in a place other than that in which they are made. (*Id.*) This is the general rule; but there are exceptions. It is also said that foreign laws may have a qualified force within a State, by the comity of nations, or by constitu-

tional provisions. In the absence of legislative inter-
ference, it may, perhaps, be said with truth that laws of
another State may have some operation in this State,
when they do not conflict with the operation of our own
laws.

As to the validity of contracts, the general rule is that
a contract which is valid where it is made, is to be held
valid anywhere. And on the other hand, if void or ille-
gal by the laws of the place where made, it is void every-
where. (2 *Pars.* 82, *and note, and authorities there cited.*)
It is, however, claimed that although contracts are gene-
rally to be construed according to the laws of the place
where they are made, still there is an exception to this
rule when the contract is made in reference to a foreign
law. There is no principle upon which such an exception
can be supported. It would, in effect, give to a foreign
law a power to control and supercede our own laws, upon
the same subject matter. This principle cannot be ad-
mitted.

If the bonds in question had been made payable in Ill-
inois, there are authorities which hold that the laws of
Illinois might be applied to them. But these bonds, be-
ing made expressly payable in this State, where they were
executed, the laws of this State must, upon all the author-
ities, be applied to them. (2 *Pars.* 95.)

The appellant's counsel cites the case of *Le Breton* v.
*Miles* (8 *Paige,* 261) as an authority for a different rule.
That was the case of an ante-nuptial contract entered into
in this State by two natives of France, relative to their
future interests in property which they had at the time of
the marriage, or which they should acquire during cover-
ture. It was made in reference to the laws of France,
where the parties expected to reside. The chancellor held,
that as France was their intended domicil, the laws of France
must be resorted to, to determine their rights to personal
property, as affected by the ante-nuptial contract. No

Smith *v.* Alvord.

authorities are cited to sustain the decision; although the chancellor says it is a well settled principle of law in relation to contracts regulating the rights of property consequent upon a marriage, so far, at least, as personal property is concerned, that if the parties marry with reference to the laws of a particular place or country as their future domicil, the law of that place or country is to govern as the place where the contract is to be carried into effect. This is but another illustration of the rule that in certain cases, the law of the place where the contract is to be performed, may be resorted to, to determine the rights of the parties, when the parties contract with reference to such a law.

The cases of *Pomeroy* v. *Ainsworth*, (22 *Barb.* 119,) and *Cutler* v. *Wright*, (22 *N. Y.* 472,) belong to the same class, and do not invalidate the general rule above referred to.

If I am right in these views, the result is, that the bonds are void for usury as to the defendant, who guarantied their payment.

It is proper to add, as I have already intimated, that I do not concur in the former decision of this court, which permits the guarantor to set up a defense which the corporation is prohibited from interposing to the same bonds. If my brethren are of opinion that the case of *Hungerford Bank* v. *Dodge* is open to review, in consequence of the later decisions in the Court of Appeals, which have been supposed to hold a contrary doctrine, I shall be willing to unite in affirming the judgment on this appeal, upon the ground that there is no usury in the bonds of the corporation, the statutes of this State having repealed the usury laws, as to corporations.

And I am unable to discover the principle upon which the contract of the guarantor is to be held void for usury, when there is no usury in the obligation which is guarantied.

Since writing the foregoing opinion, it is announced that in the case of *Rosa* v. *Butterfield*, in the Court of Appeals,

(33 *N. Y.* 665,) it was decided that the guarantor could not avail himself of the statute. The judgment must therefore be affirmed.

BACON, J., concurred.

MULLIN, J., (dissenting.) I cannot agree with the respondent's counsel that because corporations are forbidden to set up usury as a defense, therefore the usury laws are, as to them, repealed, and that, not only is the benefit of the defense taken from the corporation, but also from all persons who are parties to their contracts. My reasons for this opinion are,

1st. That the statute does not, in terms or by fair implication, extend the prohibition beyond corporations.

2d. The reasons which induced the enactment of the law do not require the prohibition to be extended to individuals.

3d. Every argument in favor of the adoption of laws against usury, requires the enforcement of those laws in cases where individuals are sued, who are parties to corporate contracts.

Experience has shown that corporations cannot borrow money on as favorable terms as individuals. This results, in part at least, from the neglect of the officers and agents, in the care and management of their affairs, and a want of attention to the prompt collection of debts due to, and the prompt payment of debts from, corporations, so that a greater risk is assumed in loaning to them than to individuals, and this risk must be compensated by a higher rate of interest. Again; while corporations may, and doubtless do, suffer from the effects of usury, yet it is not attended by the same results as in the case of individuals. The one suffers in purse, the other in both mind and purse. While both may become poor, the corporation is not made a slave; it has no children to clamor for bread; no visions

Smith *v.* Alvord.

of alms houses invade its sleep, or haunt the imagination when awake. There is a difference, a vast difference, in the mischief resulting from grinding the face of a poor corporation and of a poor man. The former has neither heart nor soul; the latter has both, and other hearts besides his own, for which he is bound to care and feel. If it be true that the credit of a corporation is not equal to that of individuals with an equal amount of capital, it must pay higher interest or go without money. The interests of society are so interwoven with corporations, they have become so essential to the business of every community, that they cannot be dispensed with. To make it necessary that private credit should be added to that of the corporation, in order to secure the lender and induce him to loan, necessarily involves all persons who may thus lend their credit in the affairs of the corporation, thereby increasing the extent of the misfortunes resulting from failure of the corporation, or subjects its stockholders to the payment of exorbitant demands for commissions paid to such sureties. These consequences are, to a considerable extent, avoided by enabling corporations to go into the market, and sell their paper at what it may be worth, without exposing the purchaser to the penalties of usury.

If, notwithstanding this law, corporations are unable to borrow money without calling in sureties, the very end and aim of the statute is defeated. The usurer, in his demand of security for a loan, is as ravenous as the hungry wolf. Like the daughter of the horse leech, his cry is give, give. If it be true that the statute has not only taken from the corporation the right to plead usury, but from all who may have become parties to its contracts, the usurer has achieved a triumph that, I trust, the legislature did not anticipate, or intend, to secure to him. For myself, I never can be induced to believe that the legislature contemplated any such shameful results. But whatever

our opinion may be on this subject, this court, in at least
two cases, has held that the prohibition does not extend
beyond the corporations. (*Hungerford Bank* v. *Dodge*,
30 *Barb.* 626. *Rosa* v. *Butterfield et al., not reported.*)

2d. I agree with the respondents's counsel, that the
contract should be regarded as made in Illinois, and in
reference to its laws, *so far as the laws of that State regulate
the power of the corporation to contract, or the manner of ex-
ecuting contracts.*  (*Bard* v. *Poole*, 2 *Kern.* 495.)  A corpo-
ration created in Illinois and authorized by its charter to
loan or borrow money, may make the contract in any
other State which permits foreign corporations to enter
into such contracts within its jurisdiction, and the contracts
made in the foreign State, if they are to be performed
there, will be governed by its laws, and not by the laws
of Illinois.  But if the contract is one which, by its char-
ter, the corporation cannot make, it is utterly void, not-
withstanding it may be lawful in the State in which it is
made. (*Bard* v. *Poole, supra.*)  In a certain sense, therefore,
every contract made by a foreign corporation in this State,
which is to be performed here, is made in reference to the
laws of the State creating the corporation.  In other
words, the law creating the corporation must be resorted
to, everywhere, to ascertain the powers conferred upon it.
But though the act of incorporation may prescribe the
rate of interest which the corporation may charge, yet in
a contract made in another State, and to be performed
there, a different rate of interest may lawfully be con-
tracted for.

3d. There is no doubt but that the contract in this case
was actually made in this State, and was to be performed
here.   In *Curtis* v. *Leavitt,* (15 *N. Y.* 9,) part of the bonds,
which were the subject of the contract in that suit, were
delivered in England, payable in English currency; the
interest was to be paid there, and certain persons residing
there were appointed to act in reference to them, and the

agreement to take the bonds in advance of their delivery was made in England. These circumstances were relied upon by the Court of Appeals, as establishing the fact that the contracts were English, and not New York contracts, where the corporation was created and transacted its business. Within the principle of the case of *Curtis* v. *Leavitt*, this was a New York contract, and governed by its laws, and not those of Illinois.

4th. It is settled, beyond all room for argument, that contracts are governed by the laws of the country where they are made, unless they are, by their terms, to be performed in some other country, in which event the laws of the latter country apply. (*Pomeroy* v. *Ainsworth*, 22 *Barb.* 118. *Jacks* v. *Nichols*, 1 *Seld.* 178. *Bard* v. *Poole*, 2 *Kern.* 495. *Davis* v. *Garr*, 2 *Seld.* 124.) This rule is clear, comprehensive, and easily applied, and governs this case, unless there is some modification of, or exception to it, which is so authoritatively established that we are not at liberty to disregard it.

The modification or exception insisted upon is, that where a contract is made in one State or country, to be performed in another, in which the rate of interest is not the same, the parties may agree for the payment of either, and the contract is not usurious in the State whose laws forbid the taking of the rate of interest provided for in the contract, and declare the agreement for such interest to be usurious and void. This doctrine rests, so far as I can find, upon two decisions of the chancellor of this State, one case in Louisiana, and an elementary work of *Parsons*, being his treatise on *Contracts*. If there is any other case or dicta supporting the exception, I have not been able to find it.

In *Chapman* v. *Robertson*, (6 *Paige*, 627,) the question was, whether a mortgage was usurious under the law of England, given on property in this State, to secure a loan made in England, and which was to be repaid in England,

the rate of interest being seven per cent, while the rate in England was five. The chancellor held that the mortgage being given on property in this State, was governed by the laws of this State, and hence, seven per cent being the lawful rate of interest here, the mortgage was valid.

While the principle thus asserted may be assented to, without overruling or qualifying the general rule that the law of the place designated by a contract for its performance governs its construction, yet I cannot yield my assent to the doctrine. The general rule of law is so simple, comprehensive, and easy of application, that it should not be abandoned nor modified, nor should exceptions to it be admitted, unless the ends of justice imperatively require it. The interests of business men are much better secured by courts establishing and enforcing rules that are easily understood and applied to the daily affairs of life, than by attempting to attain perfect justice by the multiplication of exceptions to, and qualifications of, them. The moment it is left in doubt whether a contract is to be governed by the laws of the State where it is made, or where it is to be performed, no man knows what law will be applied in any given case, and litigation and contention are introduced without the slightest benefit to any person. In the case cited, the loan was made in England, and, as the chancellor concedes, it was to be performed there. It was undoubtedly an English contract, and as it provided for seven instead of five per cent, it was, by the laws of England, usurious and void. Now the principal contract drew after it the collaterals; they were part and parcel of the contract for the loan, and stood or fell with it. It is not denied but that the mortgage, as to its form, manner of execution, and the nature and extent of the lien, and as to the remedies by which it might be enforced, was governed by the laws of New York, where the land lay. But this was the whole extent of the operation of these laws. So far as the validity of the mortgage depended on

Smith *v.* Alvord.

the validity of the contract of loan, it was governed by the laws of England, and if the original contract was usurious and void, the collaterals were also void. The chancellor did not intend to overturn this principle, which has been so long and so well established.

In *Dewar* v. *Span* (3 *T. R.* 425,) it was held that a bond given in England, payable in England, reserving a greater interest than was allowed in England, was usurious. The bond was given to secure the purchase money of land in the West Indies. Counsel insisted that it was valid under the statute 14 *George* 3, *chap.* 79, which provided that mortgages and other securities respecting lands in Ireland and the West Indies, reserving interest allowed in those countries, should be valid though executed in England. The court held that the statute did not apply to personal contracts. While the case itself is an application of the general rule for which I contend, the act to which the counsel and court refer, is a parliamentary adjudication that without the statute mortgages and other securities on land in Ireland and the West Indies would have been void for usury, where more than the English rate of interest was reserved. If such was the law, the remark of Lord Kenyon, in the case cited, that if the present attempt were to succeed it would sap the foundation of the statutes of usury, was strikingly forcible and just. Statutes like the one referred to are never passed by the British Parliament until there is a necessity for them, and then only after the terms of the law have been approved by eminent lawyers, who know what the law is, and who fully understand what change or alteration is required. It was for these reasons that a law changing the common law, becomes high evidence of what the common law was before the alteration was made.

In *Stapleton* v. *Conway* (3 *Atk.* 727) it was held that a mortgage on land in the colonies, if executed in England *and connected with a bond or other personal covenant* for the

payment of more than seven per cent interest, was usurious. This case is in direct conflict with *Chapman* v. *Robertson*. The two cases cannot be reconciled.

I submit, in view of these authorities, it is incumbent on those who seek to make an exception to the general rule, to furnish some reason why it is attempted to be made. They should show that the exception ought not to be, and in justice cannot be, reasonably and fairly within the general rule. But not a reason is assigned, nor argument furnished, why an exception should be made.

In *Pratt* v. *Adams* (7 *Paige* 615, 631) the facts were, that drafts were drawn by Rathbun on Jones, payable in the city of New York, one at sixty, and the other at ninety days, and accepted by Jones. These were discounted in Ohio for the benefit of Rathbun. One objection to their payment was that they were usurious. The usury consisted in the bank, by which the drafts were discounted, reserving six per cent discount, and Rathbun agreed to keep the bills in circulation until the maturity of the drafts, but if not, then he was to furnish the funds to pay them. If these were Ohio contracts, they were void if the rate of interest was only six per cent, as by the contract the bank was to receive, not only its interest, but the benefit of the circulation of the bills paid out on discounting. the bills, in addition thereto. Such a benefit in addition to lawful interest, was usury. Under the general rules relating to the construction of contracts, the bills were not governed by the laws of Ohio, but by those of New York, where they were payable. This disposed of the question of usury, so far as Rathbun was concerned. It was wholly unnecessary for the chancellor to go further and express an opinion on a question not before him. Indeed he clearly shows that if the contract was to be deemed to be an Ohio contract, there was not sufficient proof before him to enable him to pronounce it usurious; so that in no view of the case was he called on to give an opinion on

Smith *v.* Alvord.

the question whether the rate of interest of either Ohio or New York might have been agreed upon without rendering the contract usurious. But if the question was before him, he does not discuss it, but refers to the decision in Louisiana, and expresses his concurrence in it, without assigning any reason why he concurred. In neither of the cases cited has the question been decided, and we are at liberty to dispose of the question unembarrassed by any authoritative decision. But when so learned and able a jurist as Chancellor Walworth has examined a question of law and declared his opinion upon it, every judge will hesitate long before he will differ from him; much longer before he will overrule him. But believing as I do that he was in error, I cannot yield to a mere *dictum*, while I would concur in his decision of a question of law, though I might not be convinced of its correctness. The learned chancellor rests himself upon *Depeau* v. *Humphreys* (20 *Martin*, 1.) That case I have not seen, but taking the statement of it given by the chancellor and by Judge *Story* in his *Conflict of Laws*, the precise question now under consideration, was there examined and decided. Story dissents from the doctrine of that case, and it is not supported by a single decision in any common law court of this country or of England. The reasons why it should not be followed are elaborately stated in the *Conflict of Laws*, and I will not attempt to add to the arguments there presented.

I have referred to 2 *Pars. on Cont.*, as an authority in support of the position of the chancellor. But as no reason is furnished in support of the author's opinion, we have added only the weight of the *dictum* of a very distinguished jurist, whose opinion commands the highest respect of the profession, both at home and abroad. The question is not one of opinion merely. It is one in regard to which the reason must be convinced; as, if established, the usury laws will be, in an important class of cases, re-

Smith *v.* Alvord.

pealed, and doubt thrown upon the construction of contracts which the safety and convenience of business men require should be left undisturbed. It is folly to suppose that the law against usury will be preserved by enabling parties alleging usury to show, as is suggested by Chancellor Walworth, that the contract was made with intent to evade the usury laws of the State whose usury laws have been violated. The difficulty is, the burthen of proof is thrown upon the wrong party. The agreement should be held presumptively usurious, and require the party asserting its validity to prove the facts that would make it so. There has rarely been a case in which an agreement or course of dealing has been held presumptively valid, but the right was given to show that it was intended as an evasion of the statutes against usury, but in a short time, it ripened into an established right, and the poor privilege of proving that the agreement was entered into with intent to evade the laws against usury, afforded no protection to the victim of the usury.

I am constrained to vote for reversing the judgment, and granting a new trial, with costs to abide the event.

Judgment affirmed.

[ONONDAGA GENERAL TERM, January 2, 1866. *Mullin, Morgan* and *Bacon,* Justices.]